## BANGOR SAVINGS BANK

*vs.*

## NIAGARA FIRE INSURANCE COMPANY.

Penobscot.   Opinion August 13, 1892.

*Arbitration.   Umpire.   Fire Insurance.*

An umpire, appointed by two appraisers mutually chosen and who were unable to agree upon the amount of loss under a policy of fire insurance, after making an examination of the premises and estimates of his own, inquired of an experienced and disinterested painter respecting the cost of painting. In his report he certified that such painter's cost correctly represented his own judgment. All three joined in a unanimous award and appraisal. In an action upon the policy, *Held;* That an appraiser, in such case, has the right on any special branch of the appraisal, as an appraiser, to make use of the

judgment of another skilled in that special branch, upon whom he can depend, and the valuation of that person is his if he chooses to adopt it.

*Also*, That an appraiser, or arbitrator, may call in the aid of a third person skilled in a special branch embraced in the appraisal, and may give to the estimate of such third person such weight and credence as he sees fit, even to the point of founding his judgment upon that estimate, provided he adopts that as his real judgment.

Of valuers and appraisers as distinguished from referees and others acting in a judicial capacity.

ON MOTION ·AND EXCEPTIONS.

This was an action on a policy of insurance in which the principal question was that of the damages and its mode of adjustment. There was a preliminary question whether the plaintiff could maintain its action until a reference had been had according to the stipulation therefor in the policy; but the presiding justice held that, as the award contained no evidence of a compliance with the conditions of the agreement (the latter being an independent submission), the appraisal was not in accordance with the stipulation, and therefore not a bar to the action; and also held, as matter of law, that it was competent for the defendant to prove by parol that the appraisers in their proceedings had complied with the stipulations in the agreement by which they were bound and by which their powers were defined. The plaintiff contended, among other things, that the umpire was to adjust differences only. The defendant claimed that this contention was not supported by the evidence. The validity of the award was submitted to the jury. The jury gave a verdict of $1095.39. The damage as estimated by the appraisers was $927.40.

Other facts appear in the opinion.

*C. P. Stetson*, for plaintiff.

Arbitration clause not a bar. R. S., c. 49, § 21; *Stephenson* v. *Piscat. F. & M. Ins. Co.*, 54 Maine, 55; *Clement* v. *British Am. Ass.* 141 Mass. 298; *Reed* v. *Ins. Co.* 138 Mass. 572; *Rollins* v. *Townsend*, 118 Mass. 224; *Soars* v. *Home Ins. Co.* 140 Mass. 343. Award: *Tudor* v. *Gilchrist*, 20 N. H. 174; *Caldwell* v. *Dickinson*, 13 Gray, 365; *Walker* v. *Simpson*, 80 Maine, p. 148; *Wyman* v. *Hammond*, 55 Maine, 534; 2 Pars. Cont. *689; Morse Arbit. § § 177, 181, 182, 246,

562; *Houston* v. *Pollard*, 9 Met. 164; *Rider* v. *Fisher*, 5 Scott, 86; 3 Bing. N. R. 874; 2 Greenl. Ev. § 73; *Doherty* v. *Doherty*, 148 Mass. 367-8; *Hubbell* v. *Bissell*, 13 Gray, 298. Arbitrators consulting other persons: Morse Arbit. 165-9; *Brown* v. *Bellows*, 4 Pick. 179; *Shipman* v. *Fletcher*, 82 Va. 601; *Whitmore* v. *Smith*, 5 H. & N. 826; *Hills* v. *Home Ins. Co.* 129 Mass. 348; *Phillips* v. *Marblehead*, 148 Mass. 326; *Com.* v. *Sturtevant*, 117 Mass. 137.

*Baker, Baker and Cornish*, for defendant.

Where the policy distinctly makes the ascertainment of the damage by appraisers a condition precedent to the bringing of the suit and where the appraisal is confined to the amount alone, the condition is valid and the action cannot be supported without proof that an award has been had, or has been prevented by the fault of the company.

The distinction between valid and invalid stipulations as to arbitration is this: that where the policy requires all matters including the question of liability, to be arbitrated, the condition is void as ousting courts of their jurisdiction, but where the amount only must be arbitrated, this requirement is valid. *Avery* v. *Scott*, 8 Exch. 500; *Scott* v. *Avery*, 5 H. L. cases, 811; *Livingston* v. *Ralli*, 5 E. & B. 132; *Trott* v. *Ins. Co.* 1 Cliff. 439; *Wolff* v. *Ins. Co.* 50 N. J. L. 453, 14 Atl. Rep. 562; *Utter* v. *Ins. Co.* 8 Am. St. Rep. 922-3, note 2; *Old Saucelito Co.* v. *Ins. Co.* 66 Cal. 253; *Reed* v. *Ins. Co.* 138 Mass. 575-6 (independent stipulation); *Hood* v. *Hartshorn*, 100 Mass. 111; *Herrick* v. *Belknap*, 27 Vt. 673; *Davenport* v. *Ins. Co.* 10 Bailey, 535; *D. & H. Canal Co.* v. *Canal Co.* 50 N. Y. 250, 261-70; *Perkins* v. *Elec. Lt. Co.* 21 Blatch. 308, 16 Fed. Rep. 515; *Haughton* v. *Sayer*, 4 Hurl. & N. 643, 650; *Eliott* v. *Assurance Co.* L. R. 2 Exch. 237, 245; *Braunstein* v. *Ins. Co.* 1 Best & S. 782; *Tredwen* v. *Holman*, 1 Hurl. & C. 72; *Wright* v. *Ward*, 24 L. T. 439; *Edwards* v. *Ins. Co.* L. R. 1 Q. B. Div. 563; *Babbidge* v. *Coulburn*, L. R. 9 Q. B. Div. 235; May on Ins. § 493; Wood on Fire Ins. § 467, and cases; 2 Chit. Plead. 259, note and cases; *Hall* v. *Fire Ins. Co.* 57 Conn. 106. The same distinction has been

clearly and early stated in *Stephenson* v. *Ins. Co.* 54 Maine,
70 (whole question of liability,) ; *Birminghan Ins. Co.* v.
*Pulver*, 18 N. E. Rep. 807, (Ill.) ; *Scottish Ins. Co.* v. *Clan-
cey*, 8 S. W. Rep. 630 (Tex.) ; *McMaster* v. *Ins. Co.* 55 N.
Y. 22, 14 Am. Rep. 265.  The settled law of England, and in
this country, of Maine, Massachusetts, Connecticut, New York,
New Jersey, California, and Texas.

Arbitration clause not void under R. S., c. 49, § 21.  "Prelim-
inary proofs" there required do not dispense with other general
evidence like actual loss, &c., nor prescribe the amount and kind
necessary for recovery.  Technical terms only, well defined in
insurance, relating only to notice of loss, &c.  *Bailey* v. *Ins. Co.*
56 Maine, 481 ; *Lewis* v. *Fire Ins. Co.* 52 Maine, 496, 8, 9 ;
*Heath* v. *Ins. Co.* 1 Cush. 264-5 ; *Graves* v. *Ins. Co.* 12 Allen
394 ; *Walker* v. *Ins. Co.* 56 Maine, 380-1 ; *Fox* v. *Ins. Co.*
53 Maine, 109 ; *Martin* v. *Ins. Co.* 20 Pick. 392-6 ; *Bartlett*
v. *Ins. Co.* 46 Maine, 502 ; Endl. Stat. § § 2, 74-5 ; Smith
Stat. Con. § § 483, 535 ; *Merchant's Bank* v. *Cook*, 4 Pick.
411 ; *Ex parte Hall*, 1 Pick. 261.

Insured bound to do all reasonably in his power to procure
appraisal.  *Hood* v. *Hartshorn, supra* ; *U. S.* v. *Robeson*,
9 Pet. 327 ; *Uhrig* v. *Ins. Co.* 4 N. E. Rep. 745-6 (N. Y.
Court of Appeals.)

Award valid : *Hall* v. *Ins. Co.* 57 Conn. 156 ; *Billington* v.
*Sprague*, 22 Maine, 44.

Right of umpire to consult : *Emery* v. *Wase*, 5 Vesey, Jr.
546, s. c. 8 Vesey, Jr. 504 a ; *Anderson* v. *Wallace*, 3 Cl. &
F. 26 ; *Caledonian Ry. Co.* v. *Lockhart*, 3 McQueen, 808 ;
*Ins. Co.* v. *Goehring*, (Pa.) 11 Law Jour. 93.

WHITEHOUSE, J.  Assumpsit on a policy of insurance against
loss or damage by fire to an amount not exceeding $2000 on the
hotel building known as the "Bangor House."  The contract in
suit was one of eight policies issued by different companies on
the same property, amounting in the aggregate to $15,000.

The house was damaged by fire on the fifth day of May, 1889,
and it was not in controversy that the policy in suit was valid,

and that the defendant corporation was liable to pay the plaintiff its proportional part of the damage, according to the terms of its contract. The amount of damage which the plaintiff was entitled to recover, and the mode of its adjustment, were the only subjects of contention between the parties.

The policy in suit contains the following, among other stipulations : "This company shall not be liable beyond the actual cash value of the property at the time, if loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value ; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided, and the amount of loss or damage having thus been determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss having been received by this company in accordance with the terms of this policy."

"In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire ; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire ; and the award in writing of any two shall determine the amount of such loss."

"The loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

Having reference to these provisions of the policy, but before any disagreement had in fact arisen with respect to the amount of the damage, the parties entered into a written agreement in which it was stipulated that two appraisers named, duly

selected, one by each party (together with a third person to be
appointed by them if necessary, to decide upon questions of
difference only) should "appraise and estimate at the true cash
value the damage by fire to the property," &c.   Failing to agree,
these apprisers selected an umpire and the three performed the
duty to which they were appointed and made and signed a
unanimous report appraising the aggregate damage at $6953.50.
Proofs of loss were accordingly signed and sworn to by the
insured and delivered to the agent of the defendant company,
claiming from the company the sum of $927.40, being its propor-
tional part of the aggregate damage as fixed by the report of the
appraisers.   Subsequently, however, notice was sent to the
defendant by the insured that these proofs of loss were with-
drawn.  .

Thereupon the defendant pleaded in defense a "legal and
valid award in writing" respecting the amount of damage and
introduced in evidence the written agreement for submission,
the report or award signed by the original appraisers and the
umpire, and the "proofs of loss" above described.   A draft sent
by the defendant company in payment of the sum claimed in the
proofs of loss was also offered in evidence by the defendant's
counsel, for the purpose of showing its acceptance of the proofs
of loss and compliance on its part with the provisions of the
policy.

But it was contended that the award was not valid and binding
upon the plaintiff because it was apparent on the face of the
report that it did not conform to the terms of the submission,
and because it further appeared from extrinsic evidence, as it
was claimed, that the umpire did not confine himself to the
decision of questions of difference only in the manner contem-
plated by the submission; and that with respect to certain
branches of the appraisal he had not acted on his own judgment,
but on the judgment of other persons consulted by him without
the knowledge of the plaintiff.

Although the award made by the appraisers may be regular
and sufficient in form, it may undoubtedly be impeached for
fraud or misconduct on the part of the appraisers, or on other

grounds which vitiate all awards. On the other hand, it is obviously competent for the parties to modify or waive any provisions of their written contract by a subsequent mutual agreement not in writing. *Wiggin* v. *Goodwin*, 63 Maine, 392 ; *Goss* v. *Nugent*, 5 Barn. & Ad. 65 ; *Hall* v. *Ins. Co.* 57 Conn. 105. The last named case is precisely in point, and the court say : " The provision in the policy referred to was not designed to prescribe and it does not intend to prescribe any form of submission. It only gives certain leading features of the submission which were in fact substantially complied with. . . But the capacity of the parties to contract could not be restricted by the policy so that they could not waive its requirements and make a submission to suit themselves, provided of course it was not otherwise unlawful." So far, therefore, as there is any material difference respecting the duties of the appraisers or the umpire, between the provisions of the policy and the terms of the written agreement for a submission, the former is presumptively superseded by the latter, and in such a case the duties of the appraisers and of the umpire are to be ascertained and their conduct examined with reference to the terms of the submission actually signed by the parties.

With respect to the conduct of the appraisers it appears that Willard Cutter, of Bangor, the umpire, had resided in that city for more than forty years, had been a contractor and builder for thirty years, and was familiar with the prices of labor and materials in Bangor. In regard to his action as an appraiser he testified as follows : "I come to painting now. I partially figured that myself, and then I thought I would get a painter to figure it. . . To a certain extent this is what I got from Marston & Gorham. These are the figures which I adopted as my own." He further testified expressly that the figures made up by him after obtaining this information were his own judgment of the actual damage to the property. There was no claim that Mr. Cutter had not acted throughout with entire disinterestedness, and from an honest purpose and desire to reach a just and correct appraisal. His estimate of the aggregate damage had been adopted by the original appraisers as the amount of the unanimous award which was made and published.

Upon this branch of the case the presiding judge said to the jury:

"I am requested to give you this instruction: 'That an appraiser in the case here has the right on any special branch of the appraisal, as an appraiser, to make use of the judgment of another skilled in that special branch, upon whom he can depend, and the valuation of that person is his if he chooses to adopt it.' I cannot give you that instruction. I do not think I can change the instruction I gave you upon that subject. If after getting an opinion, if after getting an estimate, the appraiser does not treat it as his own judgment, but acts upon it as the judgment of the other party, I have said to you it would not be binding. But he may, after getting the opinion of another, act upon his own judgment, *uninfluenced perhaps, unaffected entirely* by the opinion of another. But what I call your attention to is the adoption by a referee, or an appraiser, of an estimate or judgment of a third party where he has none of his own, and where he acts upon the judgment of a third party as the basis of his own action without forming an intelligent judgment of his own.'

This instruction was also requested: "That an appraiser, or arbitrator, may call in the aid of a third person skilled in a special branch embraced in the appraisal, and may give to the estimate of such third person, such weight and credence as he sees fit, even to the point of founding his judgment upon that estimate, provided he adopts that as his real judgment." And the court said: "I do not see any necessity of instructing you further upon this branch of the case."

Touching this question the early case of *Emery* v. *Wase*, 5 Vesey, Jr., 846, is a leading and important one. It involved an agreement to sell an estate at a price to be fixed by arbitration, and it was objected that the arbitrator did not exercise his own judgment in regard to the value of certain timber. But the Master of the Rolls said: "That alone is not sufficient to prove an award bad; for a man may make use of the judgment of another upon whom he can depend, and the valuation of that person is his if he chooses to adopt it." On appeal Lord Eldon concurred in this view, 8 Vesey, Jr., 504. In *Soulsby* v. *Hodson*,

3 Bur. 1474, the arbitrators being unable to agree, chose an umpire and acted with him. The only question was whether the umpirage was duly made according to the power given to the umpire, or whether it was vitiated by the arbitrators joining in it. The court were said by Lord Mansfield to be "unanimous and clear that this was the umpirage of the umpire only. He was at liberty to take what advice or opinion of assessors he pleased." In *Anderson* v. *Wallace*, 3 Clark & Fin. 26, it was held that by adopting in terms the opinion of a third person consulted by them the arbitrators do not constitute him an umpire, but make his opinion their own, and their award cannot be impeached on that ground. In his work on arbitration (3d ed. p. 199,) Mr. Russell says : "The cases are numerous to show that an arbitrator may submit a material question affecting the merits of the case to another, and after hearing his opinion adopt it as his own upon the credit which he gives to the judgment and skill of the person to whom he refers."

In Morse on Arbitration, p. 169, after citing numerous authorities the author says : "The theory is sufficiently plainly developed in these English cases that the arbitrator may, for his own information and guidance, ask information from persons whose capacity to form an accurate opinion concerning the subject matter he relies upon ; that the statements thus obtained by him are to be treated as evidence or as aids by which he may make up his own opinion. He may give them such weight and credence as he sees fit, even to the point of founding his judgment upon them ; but it is essential that he *should* form his judgment, and not adopt and follow them absolutely, blindly, or in contravention of an actual opinion of his own."

Referees may also "make inquiry abroad to ascertain for their own satisfaction the price of work or the truth of any other matter which may be said comparatively to be of a public nature. This it is said, so far from being irregular, would be highly commendable." Morse Arbitration, 137. See also *Vannah* v. *Carney*, 69 Maine, 221.

But it is unnecessary to the decision of the question here raised to adopt in its full extent the doctrine apparently es-

tablished by these authorities relating to the ordinary submission of an existing controversy to referees. The question here does not arise in connection with a general submission to arbitration.

It was a proceeding for the ascertainment of a single fact or the settlement of a particular question in the chain of evidence, and not originally designed to terminate the whole controversy. In the absence of definite knowledge as to the extent of the loss and in anticipation of a possible disagreement, it was mutually agreed that the damage should be "ascertained and estimated" by competent and disinterested appraisers selected with special reference to their knowledge, skill and experience in regard to the subject matter. This duty is to be performed by the appraisers mainly by the aid of a personal examination of the premises and an application of their personal knowledge. They are not expected to hold a formal session of court to determine an entire controversy after hearing pleadings, evidence and argument. Their proceedings resemble more the process of taking expert testimony. Whether mere valuers or appraisers thus appointed for such a purpose, can be deemed arbitrators in any proper sense or for any purpose, there is no occasion to decide. The authorities are not in harmony upon the subject. See Morse on Arbitration, 38, 42, and cases cited. It is not necessary to follow the different courts in their ingenious efforts to trace, for all cases, a line of distinction between a mere appraisement and an ordinary submission to arbitration. The result may be that such appraisers are properly considered arbitrators for some purposes but not in all respects. All are invested with *quasi* judicial functions, which must be discharged with absolute impartiality, without the improper interference of either party, or undue influence from any source. But appraisers may be said to act in the two-fold capacity of arbitrators and experts. In their character of experts they not only give effect to opinions based directly on their personal experience and knowledge, but also opinions founded in some measure upon information which may not be so direct and original as to be competent in itself as primary evidence. A witness called as an expert is expected before testifying to refresh his memory and confirm his judgment by

an examination of authorities and conference with other experts. The umpire did precisely this and no more in the case at bar. After making an examination of the premises and certain estimates of his own, he made inquiry of an experienced and disinterested painter respecting the cost of painting. His conclusions may have been affected and modified to some extent by the information thus obtained, but he declares that his report correctly represented his own judgment. He was not only unconscious of any impropriety in seeking this information but was evidently engaged in a careful and conscientious effort to reach a just and correct appraisal. So far from being improper and illegal, his conduct was entirely praiseworthy. Any rule which would prohibit an appraiser from thus qualifying himself to do justice between the parties, so far from being an aid in the ascertainment of truth, would be an essential obstacle to it. Two or three appraisers with personal knowledge so definite and comprehensive as to embrace all the details of the damage, could not ordinarily be found. Either a court must be held to hear evidence, or a separate appraiser appointed for each of the numerous special branches of an appraisal. Such a rule would be inconsistent with the approved and established methods of conducting important departments of business, and tend to defeat the very object contemplated by the parties in providing for an appraisement.

The instructions requested by the defendant's counsel upon this point were evidently drawn with direct reference to the authorities cited and appear to be in harmony with the principles here enunciated; but the language of the charge upon this branch of the case, which was doubtless inadvertently used, taken in connection with the refusal to give the requested instructions, was calculated to give the jury an erroneous impression of the law respecting the conduct and duty of an appraiser under the circumstances disclosed by the evidence in this case.

*Exceptions sustained.*

PETERS, C. J., WALTON, VIRGIN, EMERY and FOSTER, JJ., concurred.