### Edward Stone v. Erastus B. Baldwin et al.

#### Gen. No. 12,563.

1.   PARTNERSHIP—*when overdraft by one-partner may, when may not, give copartner ground for tracing same into hands of third party.*   If one partner in fraud of his copartner's rights, abstracts funds and invests them in property in his own name or in that of his wife or of a third person, or uses them to pay off encumbrances upon his own property or that of his wife, the defrauded partners can follow the funds; but there must be some element of fraud in the appropriation: thus, mere overdrafts give no right to proceed against the separate estate.

2.   STATUTE OF LIMITATIONS—*when begins to run against partner as to funds fraudulently diverted by his copartner to third person.*   The Statute of Limitations begins to run in favor of the third person to whom it is claimed partnership funds have been fraudulently diverted immediately upon such fraudulent diversion, if the injured partners have knowledge of it.

3.   ARBITRATION AWARD—*when binding upon parties.*   An award of arbitrators made in good faith, without fraud or misconduct, is bind-

ing and effective, even though based upon a mistaken view of the facts or of the law, or both.

4. ARBITRATION AWARD—*what does not vitiate.* The taking of legal counsel by the arbitrators is not misconduct which will vitiate their award subsequently made.

5. ARBITRATION AWARD—*when cannot be questioned.* Where the parties to an award acquiesce therein and destroy the evidence upon which it could be reviewed, an estoppel results which will preclude its being thereafter questioned in court.

Bill for accounting. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1905. . Affirmed. Opinion filed July 2, 1906.

**Statement by the Court.** This appeal is from a decree of the Superior Court of Cook County dismissing for want of equity the bill of appellant, Edward Stone, against the appellees, Erastus B. Baldwin, Martha J. Barnes, Lawrence K. Barnes, her husband, Alice Peters and Charles V. L. Peters, her husband. Martha J. Barnes and Alice Peters are the daughters and heirs at law of Jane M. Baldwin, deceased, who was the wife of the principal defendant, Erastus B. Baldwin.

The original bill prayed for an accounting between complainant Stone and defendant Baldwin of partnership transactions extending over many years, and for a decree against Baldwin for such moneys as might be due to complainant Stone on said accounting, and that a certain lot in Cook county charged in the bill to have been bought by Baldwin in the name of his wife, Jane M. Baldwin, but with partnership funds and improved with partnership funds by a brick dwelling-house, in which since its completion Baldwin has resided with his family, might be declared subject to a lien for the sum found due and owing complainant, and sold to pay the same.

An amendment to the bill filed September 24, 1904, made more detailed charges concerning the aforesaid lot, and prayed for a further lien on it as against all the defendants, for the repayment of certain copartnership funds wrongfully applied by Baldwin to the satisfaction of an encumbrance on said lot in said amendment described.

Answers were filed October 10, 1904, by Baldwin, by Alice Peters and Charles V. L. Peters, and by Martha J. Barnes and Lawrence K. Barnes to the bill as thus amended.

March 4, 1905, by leave of court, the complainant further amended his bill. As thus amended, its material charges were that before May 1, 1869, one A. M. Baldwin, the appellee, Erastus B. Baldwin, and the complainant Stone, had been engaged in the commission and produce business at Chicago under the name of Baldwin, Stone & Company, and that on said date that firm dissolved and E. B. Baldwin and Stone formed the copartnership of Baldwin & Stone, continuing as equal partners; that E. B. Baldwin on May 1, 1869, contributed to the capital of the new firm his share of the available assets of the old firm, namely, $3,163.26, and complainant Stone contributed his share of those assets, $9,039.15 and $250 besides, making $9,289.15. That with said capital the firm continued in business from May 1, 1869, to May 1, 1904, when it was dissolved by mutual consent, and that all things connected with the firm have been settled except as afterward in said bill stated; that on account of the excess in capital contributed by Stone and excess of drafts from the profits of said business by Baldwin, there was due at the dissolution of the partnership a large sum from Baldwin to Stone, but that there was no dispute between them except as to the allowance to complainant of interest on said excess capital, and that this difference was submitted to one Reeme and one Gray "to settle and determine from the proofs that should be presented as to such question of interest"; that complainant presented statements showing the respective contributions of capital and statements showing the respective amounts of money withdrawn; that the arbitrators called no meeting and took no proofs, but came together with Baldwin and complainant and asked complainant if it was true that in 1875 the firm of Baldwin & Stone had failed and the capital lost; that complainant said it was not true that the capital had been lost, and that they then gave complainant twenty-four hours' notice to show by the books of said

firm that said capital had not been lost; that the arbitrators returned in a day or two, when complainant informed them that the firm books for 1875 were not in his control, and that no such question of loss of capital had been submitted to the said arbitrators; that the arbitrators insisted that the capital had been lost by the failure of 1875, and that complainant had lost the claim against Baldwin for excess capital, together with the interest thereon; that the arbitrators were deceived by the false representations of Baldwin, and that Baldwin prevailed on the arbitrators to exceed their powers; that Baldwin, pretending to act upon the arbitration, after setting aside for complainant the amount of the balance or excess of the money drawn from the firm by Baldwin over that drawn by complainant, took half the remainder of the assets, without reference to complainant's claim on account of his excess contribution to the capital and of interest due thereon; that all the acts and doings of the arbitrators were absolutely void; that it was with money derived from inheritance that Baldwin bought the lot described in the original bill; that he took title in the name of his wife, and then with money drawn from the Baldwin & Stone business made improvements by erecting a dwelling-house costing $4,000; that because Baldwin was indebted to complainant on account of excess capital and interest, the putting of the property in his wife's name was fraudulent and void, and that complainant is entitled to a first lien on the lot and improvements and to a decree of foreclosure and sale to satisfy the lien.

To this second amended bill Alice Peters and husband filed an answer March 24, 1905, and March 25, 1905, Martha J. Barnes and Lawrence K. Barnes filed an answer exactly similar. They aver that Baldwin bought the lot described in the original and amended bills for his wife when solvent and in prosperous circumstances; that he subsequently expended $2,000 derived from the profits of the Baldwin & Stone business, together with $3,500 borrowed on mortgage, in a dwelling-house for his wife and himself on said lot; that by descent Alice Peters and Martha J. Barnes are

seized in fee simple absolute of said premises as tenants in common, subject to a life interest in Baldwin conveyed by them to him in consideration of his payment of $1,700 on the mortgage after the death of Mrs. Baldwin; that the moneys drawn by said Baldwin were drawn in June and July, 1884, with the knowledge and consent of complainant, and expended with his knowledge, and that he is barred by *laches* and by the Statute of Limitation from claiming any interest or lien in or on said real estate. All other material allegations of the amended bill are denied. Baldwin also filed an answer to the second amended bill on March 24, 1905, in which answer, *inter alia*, he denied that there was no dispute between the partners at the dissolution of the partnership except as to the allowance to complainant for interest on alleged excess capital, and averred that there were other differences and claims as to the settlement of the partnership matters, and particularly as to whether or not there should be an allowance to complainant for excess capital; that not being able to agree, the complainant Stone and defendant Baldwin stipulated to submit themselves to the arbitration of one H. C. Gray and J. B. Reeme, or of an umpire to be chosen by said Gray and Reeme if they should disagree, concerning all of the differences and the entire question of the settlement of the partnership affairs and the division of the partnership assets; that the arbitrators acted and in May, 1904, made their award; that defendant and complainant accepted said award, and agreed to fulfill it; that defendant, at request of complainant, took upon himself the collection and distribution of the assets of the partnership in accordance with the award; that all payments provided for in the award have been made by defendant and accepted by complainant, and all the assets of the partnership to be divided between defendant and complainant according to the award, collected and distributed according to the award, except two accounts amounting to $114.63; that complainant was bound by the award. The answer denied all the allegations of the bill concerning the arbitration which attacked its fairness or imputed improper

conduct to the arbitrators. It also averred that the facts concerning the home bought for his wife were that it was a reasonable gift to her when solvent and in prosperous circumstances; that the sum of $2,000 only of the money which went into the house was withdrawn from the partnership; that this was in June and July, 1884, and was from gains and profits, and was with the knowledge and consent of the complainant, who never objected thereto or claimed any lien or interest on the real estate.

Replications being filed to these answers, the cause was heard by the chancellor in June, 1905, on the depositions taken and submitted to him by the complainant. The depositions were of the defendant, E. B. Baldwin, of the complainant, Edward Stone, and of Henry C. Gray and Josiah B. Reeme. The complainant rested on the production of these depositions and certain documentary evidence referred to therein, and all the defendants respectively moved to dismiss the bill for want of equity. The motion was granted and the bill dismissed.

The assignment of errors in this appeal alleges that the decree was erroneous in disregarding evidence entitling complainant to relief on the question of accounting between the parties and in disregarding evidence that the conduct of the arbitrators was improper, and the award fraudulent.

TAYLOR & MARTIN, for appellant.

OLIVER & MECARTNEY, for Erastus B. Baldwin, appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The view that we take of the issues involved in this appeal renders unnecessary any adjudication by us on what under the state of facts shown by the evidence in the cause were the legal rights of E. B. Baldwin and Edward Stone as against each other on the dissolution of their copartnership, and before they entered into an agreement for an arbitration.

As to Mrs. Peters and Mrs. Barnes, there are reasons, in-

dependent both of the personal claims and counter-claims of Baldwin and Stone, and of the arbitration in which those claims were adjudicated, quite sufficient to justify the decree of the court below.

Whatever the evidence may be claimed to show concerning the legal pecuniary relations of Baldwin to Stone and to the partnership, it is clear to us that it shows no such surreptitious, illegal or unauthorized use by Baldwin of the partnership funds of Baldwin & Stone as would in any event give to Stone any lien on the property belonging to Mrs. Peters and Mrs. Barnes on the ground that such funds had been invested therein.

The only withdrawals from the funds of the firm which were connected with this property seem to have been made from its income, and to have been made in a manner entirely open and above board. They have been counterbalanced by equal drafts by, or by payments to, the other partner, and seem to us to be no more illegal, irregular or lien producing, because devoted by Baldwin to the improvement of Mrs. Baldwin's property for a dwelling-house for himself and wife and children, than if they were made for any other living expense of his family.

As is said in Bates on Partnership, section 545: "If one partner, in fraud of his copartner's rights, abstracts funds and invests them in property in his own name or in that of his wife or of a third person, or uses them to pay off incumbrances upon his own property or that of his wife, the defrauded partners can follow the funds. But it seems that there must be some element of fraud in the appropriation—thus mere overdrafts give no right to proceed against the separate estate. Thus, where a partner drew out money and expended it on his wife's land, there was held to be no lien for it unless the taking was surreptitious or in bad faith.   Sharp v. Hibbins, 42 N. J. Eq. 543."

The case thus cited by Bates will be found on examination to be entirely in point.

Moreover, we think that the Statute of Limitations and *laches* are valid defenses to this bill so far as these defend-

ants, Peters and Barnes, are concerned, according to any theory of the cause by which any funds going into the house in question could be said to be assets of the firm. Whether or not any limitation would begin to run in favor of Baldwin before the dissolution, we can see no reason why it should not begin to run immediately upon the diversion in favor of a defendant not a party to the partnership, into whose property the partnership funds improperly go, with the knowledge, although without the consent, of injured partners.

We will not take the time to discuss the question argued at length in the briefs as to the competency, as against the defendants Peters and Barnes, of the testimony offered concerning the diversion of partnership funds into Mrs. Baldwin's house. For if there be any valid claim as against the property of these defendants which can be enforced in this suit, it depends on the existence of the claim in favor of the complainant sought to be enforced in this same suit against the defendant Baldwin. We agree with the chancellor below that there is no such claim, and this position renders superfluous further discussion of other reasons justifying the dismissal of this bill against Mrs. Peters and Mrs. Barnes.

The award of the arbitrators was made, as it appears to us, in good faith, without fraud or misconduct. So made, it was binding and effective, even though based on a mistaken view of the facts or of the law or both.

In Merritt v. Merritt, 11 Ill. 567, the Supreme Court said: "If they" (*i. e.* arbitrators) "have acted in good faith, the award is conclusive upon the parties, and neither party is permitted to avoid it by showing that the arbitrators erred in their judgment either respecting the law or the facts of the case. Whether their decision was correct or erroneous is not the proper subject of inquiry." To the same effect are: Root v. Renwick, 15 Ill. 461; Sherfy v. Graham, 72 Ill. 158; Schmidt v. Glade, 126 Ill. 485, and other cases in Illinois. Adams v. Ringo, 70 Ky. 211, Brush v. Fisher, 70 Mich. 469, and Burchell v. Marsh, 17 Howard,

Stone v. Baldwin.

344, may be cited among cases in other jurisdictions to the same purport.

In the American and English Encyclopædia of Law (2nd ed.), vol. 2, page 778, the weight of authority in the United States is said to be as it has been stated in Illinois, and on that and subsequent pages are grouped many authorities which sustain the rule and define and limit its exceptions. Among these exceptions it may be conceded would be a case where the mistake of law or fact was the result of fraud on the part of either party to the arbitration, or gross misconduct on the part of the arbitrators. It is insisted by appellant that these conditions exist in this case. We see no reason for so holding. One ground relied on by appellant for this charge is that a letter written by the counsel for one of the parties to that party, and expressing an opinion of the law, was shown to the arbitrators openly and in the presence of the parties. There is nothing to indicate that this letter was intended to deceive, or stated anything but the actual opinion of the writer. The argument that it contained a double meaning or was evasive, or was intended to be so, is not sustained to our minds. Conceding that it was mistaken as to the rule of law, its presentation would not be fraudulent or improper. It was at best but an argument, and it does not appear from the evidence that the decision would have been different without it. The testimony of Mr. Reeme, on the contrary, was that the arbitrators did not act on the letter altogether; that on the contrary they regarded their decision "as an honest decision between man and man," because Mr. Baldwin "had due him as much or more for the business than Mr. Stone had." Nor does Mr. Gray's testimony bear out any different view.

The matter cannot be said to have been the taking of legal counsel by the arbitrators, but it would have been competent and not misconduct for them to have taken such counsel. Russell on Awards, pages 208, 211 *et seq.*; Goodman v. Sayers, 2 J. & W. 249; American and Eng. Ency. of Law, 2nd ed., vol. 2, p. 688; Burchell v. Marsh, 17 How.

344, and cases there cited; Bangor Savings Bank v. Ins. Co., 85 Me. 68.

We do not think that Moshier v. Shear, 102 Ill. 169, or the other cases cited in appellant's argument, properly considered, decide anything contrary to this proposition.

Certainly, in view of the law as thus stated, the testimony of Mr. Reeme, in connection with the Oliver letter, "*I got the same opinion from some one else, too,*" cannot be deemed sufficient to overthrow the effect of the award.

It is argued also by the appellees that the acquiescence of appellant in the award after it was made, is by itself sufficient to prevent a successful attack on it in this cause. Acquiescence by Stone is certainly shown by the evidence, and we are disposed to think from an examination of the authorities that the point of appellees in this regard is well made. Moreover, if the testimony of Mr. Baldwin is given credence, that the next day after the award, and because the award was considered a final settlement, the account books of the firm were destroyed, we think the matter passes from a mere acquiescence into an estoppel.

It was the allegation of the bill in this case that the arbitrators went beyond the scope of their duties and decided matters not submitted to them. If this is to be considered as still urged by appellant, it is sufficient to say that the evidence amply sustains the statement of Mr. Baldwin that the question submitted to the arbitrators was the final settlement of the affairs of Baldwin & Stone.

The decree of the Superior Court is affirmed.

*Affirmed.*