STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-07-332
TED-CUM-3/13/2008

ROGER ST. PIERRE,

Plaintiff,

v.

ENCOMPASS FINANCIAL GROUP,

Defendant

**ORDER ON PLAINTIFF'S MOTIONS
TO QUASH SUBPOENAS**

DONALD L. GARBRECHT
LAW LIBRARY

APR 02 2008

## I. BEFORE THE COURT

This matter comes before the court on plaintiff Roger St. Pierre's (St. Pierre) motions to quash subpoenas.

## II. PROCEDURAL HISTORY AND BACKGROUND[1]

St. Pierre purchased a homeowner's insurance policy from the defendant, Encompass Financial Group (Encompass). In January 2005, St. Pierre sustained damage to his home, the cause of which is disputed.[2] St. Pierre submitted an initial estimate of the damage to Encompass, which was rejected because it was considered excessive. Encompass invoked the appraisal provision of the policy, which requires both parties to each select an appraiser. When two selected appraisers cannot reach an agreement as to

---

[1] It is a bit difficult to discern the undisputed facts of this case because the answer filed by Encompass asserts different facts than those submitted by the plaintiff even as it is purporting to admit them. The paragraphs do not coincide with those in the plaintiff's complaint, and Encompass is essentially denying many of the plaintiff's averments without specifically doing so.

[2] In his complaint, St. Pierre states that the cause of the damage was from blasting operations occurring near his home. In its answer, Encompass admits that damage to St. Pierre's home did occur, but states that it was caused by "puff back" from a damaged chimney.

the amount of damages, they choose an umpire to make a final and binding decision.[3] St. Pierre selected Chase Langmaid (Langmaid), and Encompass chose John Harvey (Harvey). Langmaid later withdrew before completing the appraisal, and St. Pierre picked a replacement appraiser, Jack Carr (Carr). Encompass did not object to Carr serving as a replacement.

Before the appraisal process was completed, Encompass notified St. Pierre that it intended to end the appraisal process and would pay him in accordance with the estimate provided by Harvey, their selected appraiser, which was for $40,622.47. Carr subsequently completed his appraisal and estimated the damage at $654,276.10.

St. Pierre filed a complaint alleging breach of contract and violations of Maine's Unfair Claims Settlement Act. Encompass filed its answer and contests plaintiffs claims. St. Pierre has now filed motions to quash subpoenas that were issued to Langmaid, Carr, and George Von York (Von York), a public adjuster that was separately hired by plaintiff. Encompass objects to the motions to quash.

### III. DISCUSSION

#### A. Standard of Review

M.R. Civ. P. 45(c)(3)(A)(iii) authorizes the court to modify or quash a subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies." Rule 45(d)(2) provides that a party who withholds subpoenaed information on a claim of privilege or work product must include with that claim "a description of the nature of the documents, communications, or things not produced

---

[3] Neither party has submitted a copy of the policy to the court; therefore, the court relies on the representations of the parties as to the content of the policy.

that is sufficient to enable the demanding party to contest the claim."[4]  Any motion regarding a subpoena that is issued in discovery or pretrial proceedings is to be made pursuant to Rule 26(g). M.R. Civ. P. 45(e).  Rule 26(g) prohibits written motions without prior court approval, and only after the moving party has tried in good faith to resolve the dispute by speaking with the opposing party.  If the parties are unable to reach an agreement, the moving party is to request in writing a hearing from the clerk.[5] *Id.*

## B. Motion to Quash Subpoenas Issued to Langmaid and Carr

### 1. Standing

Encompass argues that St. Pierre does not have standing to move to quash the subpoenas issued to Langmaid and Carr because only persons who are subject to the subpoenas may contest them under Rule 45(c)(2)(B).

### 2. Langmaid and Carr as Quasi-Judicial Officers

St. Pierre argues that the court should quash the subpoenas that Encompass issued to Langmaid and Carr because, as appraisers, they were acting in a quasi-judicial capacity and should not be compelled to submit information concerning their mental processes in arriving at their decisions.  St. Pierre contends that the role of an appraiser is no different than that of an arbitrator that is selected by parties to decide a case, particularly since they have the authority to agree to a binding decision under the terms of the policy.

Encompass argues that Langmaid and Carr cannot be considered quasi-judicial officers because they do not perform quasi-judicial functions as appraisers.  According

---

[4] St. Pierre did not file a privilege log with his motion to quash the subpoena issued to Von York.  He did, however, file one on the day he filed his reply to Encompass' opposition.  He has not filed anything with respect to the subpoenas issued to Langmaid and Carr.

[5] Encompass has argued that St. Pierre did not first discuss his objection to the subpoenas with it, nor did he request a hearing from the clerk by letter.  It has asked the court to dismiss the motions on that basis. The court has heard the parties and reviews the merits of the of the merits of their positions.

3

to Encompass, although appraisers are obligated to honestly appraise damage, they do not hear or weigh evidence, nor do they make decisions. Furthermore, because they are designated by and paid by one or the other of the parties, Encompass argues that they cannot be considered neutral. Encompass also asserts that under the policy, appraisals are not binding on either party unless there is an agreement between both appraisers, or a selected umpire makes a decision.

Encompass further contends that even if the court were to determine that Langmaid and Carr were acting as quasi-judicial officers, not every requested document would concern the mental processes of the appraisers. Encompass asserts that St. Pierre must identify the documents that he is withholding and state the reasons for doing so, and cannot simply object to producing any documents on the ground that some are protected.

In 1892, the Law Court discussed the dual nature of appraisers as both experts and arbitrators. *Bangor Savings Bank v. Niagara Fire Ins. Co.*, 85 Me. 68, 77, 26 A. 991, 993 (1892). In a case involving an almost identical arbitration clause to the one that is implicated here, the insured party had disputed the binding effect of an umpire's decision on damages, because the umpire had consulted with the two other appraisers and the three had reached a unanimous agreement. *Id.* at 73, 26 A. at 992. The trial court refused to issue the defendant insurer's proposed jury instructions regarding the appropriateness of the umpire's reliance on the judgment of the other appraisers, and the defendant appealed. *Id.* at 75, 26 A. at 992-93. The Court agreed with the defendant that the trial court should have given the instructions, noting "appraisers are properly considered arbitrators for some purposes, but not in all respects." *Id.* at 77, 26 A. 993.

4

Although the Court did not definitively rule that appraisers are always acting as arbitrators,[6] it did determine that "[a]ll are invested with quasi judicial functions, which must be discharged with absolute impartiality, without the improper interference of either party, or undue influence from any source." *Id.* However, the Court also discussed how appraisers also function as expert witnesses, stating "in their character as experts they not only give effect to opinions based directly on personal experience and knowledge, but also opinions founded in some measure upon information which may not be so direct and original as to be competent in itself as primary evidence." *Id.*

In this case, Langmaid, Carr, and Harvey were acting more as experts than as arbitrators. They were expected to provide an independent assessment of the damage to St. Pierre's house, based on their experience and training. If there was a disagreement between the two selected appraisers, they were expected to choose a neutral umpire to make a binding decision. Although they could agree to the amount of damages, and any such agreement would be binding on the parties, that action is more akin to a settlement, not arbitration. While appraisers may have some quasi-judicial functions, Langmaid and Carr cannot be considered quasi-judicial officers in these circumstances.

### 3. Documents Held by Langmaid

St. Pierre also asserts that Encompass is not entitled to any documents in Langmaid's possession because Encompass agreed to allow St. Pierre to replace him with Carr as his chosen appraiser. Moreover, because Langmaid did not complete his appraisal, St. Pierre insists that any documents subpoenaed from Langmaid are not

---

[6] The Court specifically did not answer that question, stating "[w]hether mere valuers or appraisers thus appointed for such a purpose, can be deemed arbitrators in any proper sense or for any purpose, there is no occasion to decide." *Id.*

reasonably calculated to lead to the discovery of admissible evidence.[7] Encompass argues that because St. Pierre is seeking damages from the loss to his property, and because Langmaid's job is to value damaged property, it is impossible to see how documents in his possession would not lead to the discovery of admissible evidence.

Encompass asserts that the documents could show that St. Pierre failed to meet his obligations under the policy, and that Langmaid withdrew because of St. Pierre's "lack of cooperation and respect." Encompass has attached a copy of a letter from Von York to St. Pierre, advising him to discontinue Langmaid's services and accept Encompass' last offer. According to Encompass, this letter shows that St. Pierre did not act in good faith during the appraisal process, because he is not allowed to change appraisers until he finds one to his liking.

St. Pierre counters that his claim is for damages to his property and because Langmaid did not appraise his property, it is difficult to see how his opinions are relevant. More importantly, St. Pierre asserts that the Von York letter is an opinion letter directed at the request of his attorney and is therefore protected by the work product doctrine. He argues that he asked Encompass to return the document, although he does not explain the circumstances in which Encompass gained possession of the letter in the first place. He is asking the court to strike the letter from the record.

The Law Court has held that inadvertent disclosure of a privileged document does not constitute a waiver of the attorney-client privilege. See *Corey v. Norman, Hanson & DeTroy*, 199 ME 196, ¶¶ 19-22, 742 A.2d 933, 941-942. The question of whether a disclosure was inadvertent depends on "whether there was intent and authority for

---

[7] Although St. Pierre has not specifically cited the rule, he is referring to Rule 26(b)(1), which concerns the scope of discovery and does not allow objections to discovery requests on the basis of the admissibility of evidence at trial "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

the disclosure." *Id.* ¶ 19, 742 A.2d at 941 (quoting *Mendenhall v. Barber-Greene Co.*, 531 F. Supp. 951, 954-955 (N.D. Ill. 1982)). Here, St. Pierre is asserting that the work product doctrine protects the letter, not the attorney-client privilege.[8] Still, it seems likely that the rule prohibiting the use of inadvertently disclosed material that is protected by the attorney-client privilege would also extend to material protected by the work product doctrine. However, as noted, it is not clear from the parties' pleadings how Encompass gained possession of it.

M.R. Civ. P. 26(b)(3) allows for disclosure of materials that are "prepared in anticipation of litigation or for trial" only when the party seeking disclosure shows that it has "a substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Protected materials are not limited to those prepared by an attorney. *Id. See also Harriman v. Maddocks*, 518 A.2d 1027 (Me. 1986) (holding that materials prepared by a claims adjuster in anticipation of litigation were protected against disclosure). The rule also instructs the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.* Given that Von York was acting as a representative of St. Pierre, and the letter contains his opinions and conclusions regarding the best course of action for St. Pierre to take, the only question to decide is whether the letter was written in anticipation of litigation. At the time the letter was written, St. Pierre was still engaged in the process specified by the appraisal provision of his policy.

---

[8] St. Pierre does, however, assert in his motion to quash the subpoena issued to Von York that both the work product doctrine and the attorney-client privilege protects documents in Von York's possession.

### 4. Motion to Quash Subpoena to Von York

St. Pierre seeks to quash the subpoena issued to Von York because he argues that documents in Von York's possession are protected by both the attorney-client privilege and the work product doctrine. He asserts that Von York has been an active member of his legal team and is privy to privileged information. Encompass argues that the documents cannot be privileged because Von York is not a client representative, and he was not hired for the purpose of obtaining legal services or to act on the advice of St. Pierre's attorney.[9] Encompass also argues the nature of work performed by a public adjuster cannot be considered that which would result in documents prepared in anticipation of litigation, because a public adjuster is in the business of settling claims.

Because the letter was sent from Von York to St. Pierre, it can only be protected by the attorney-client privilege if Von York is a "representative of the client." M.R. Evid. 502(b)(4). A client representative is defined as "one having authority to obtain professional legal services, *or to act on advice rendered pursuant thereto*, on behalf of the client." *Id.* at 502(a)(2) (emphasis added). St. Pierre asserts that he has vested Von York with the authority to act on legal advice given by his attorney because Von York has participated in meetings and conversations with his attorney, and has communicated with appraisers and other non-parties at the direction of his attorney. However, the adviser's note to Rule 502 states that the privilege extends only to "communications by persons of sufficient authority to make decisions for the client." St. Pierre has not shown that Von York had authority to make decisions for him, notwithstanding his participation in meetings and communication with appraisers.

---

[9] Encompass also argues that St. Pierre must produce a sufficiently descriptive list of the documents that are claimed to be privileged. As noted above, St. Pierre did so when it filed its reply to Encompass' opposition.

8

As discussed above, however, the work product doctrine may protect documents held by Von York, but it is unclear whether it covers everything in his possession. The question is whether any of the materials were prepared in anticipation of litigation. The court will conduct an in camera review of the documents to determine whether they are protected.

## IV. DECISION AND ORDERS

The clerk will make the following entries as the Decision and Orders of the court:

**A.** The Motion to Quash as to Chase Langmaid is denied.

**B.** The Motion to Quash as to Jack Carr is denied.

**C.** As to the Motion to Quash for George Von York, it is ordered that the plaintiff submit to the court within 14 days of the date of this Order all subpoenaed documents and records for *in-camera* review.

**D.** All documents submitted to the court shall be under seal and shall remain confidential until further Order of court.

**SO ORDERED.**

DATED: March 12, 2008

Thomas E. Delahanty II
Justice, Superior Court

9

)F COURTS
and County
Box 287
ine 04112-0287

HOWARD REBEN ESQ
ADRIENNE HANSEN ESQ
REBEN BENJAMIN & MARCH
PO BOX 7060
PORTLAND ME 04112-7060

)F COURTS
land County
Box 287
aine 04112-0287

ALTON STEVENS ESQ
MARDEN DUBORD BERNIER & STEVENS
PO BOX 708
WATERVILLE ME 04903-0708