(February 4, 1911.)

A. F. BEYMER, Appellant, v. JOHN W. MONARCH and WILLIAM S. PORTER, Appellants, and THE TITLE GUARANTY & SURETY CO., Respondent.

[113 Pac. 739.]

MONEYS HAD AND RECEIVED—LIABILITY TO THIRD PARTIES—INSUFFICIENCY OF EVIDENCE.

(Syllabus by the court.)

1. Where it appears that T. G. & S. Co. received a sum of money from the debtor of M. & P. for the purpose of applying the same on the debts owed by M. & P. at the time of the receipt of the money, the creditor for whose benefit the money was so paid may maintain an action against T. G. & S. Co. as original promisors to pay the same over to the creditors entitled thereto.

2. Evidence in this case examined and *held* insufficient to support findings and judgment in favor of the respondent, Title Guaranty & Surety Co.

APPEAL from the District Court of the Third Judicial District, in and for Ada County. Hon. Fremont Wood, Judge.

Action by plaintiff for debt. Judgment for plaintiff against defendants Monarch & Porter and in favor of the other defendant, Title Guaranty & Surety Co. · Plaintiff and defendant Monarch & Porter appeal. *Reversed.*

Robert R. Wedekind and John Porter, for Monarch & Porter.

"The contract need not be expressed, but may be implied from the conduct of the parties." (23 Cyc. 453, citing many authorities.)

"The right to bring an action exists whenever a person, natural or artificial, has in his or its possession money which in good conscience belongs to the plaintiff, and neither expressed promise nor privity between the parties is essential." (*Hoyt v. Paw Paw Grove Juice Co.,* 158 Mich. 619, 123 N. W. 530.)

"The rule that agency cannot be proved by the acts and declarations of the agent is modified when the principal is an artificial personage." (*M. & O. Ry. Co. v. Simons,* 6 Tex. Civ. 621, 25 S. W. 996.)

Cavanah & Blake, for Appellant A. F. Beymer.

The promises of the defendant company, made both orally and in writing through its agents, Neal & Kinyon and T. P. Murphy, to pay these claims in consideration of plaintiff and his assignors forbearing to bring suit and extending further credit to the defendant company, was a new and independent consideration passing between them as new contracting parties and independent of the original contract. The leading object of the promise of the company was to subserve and promote its own interest, as it was interested in the completion of the

contract of Monarch & Porter. Such promises do not come within the statute of frauds. (20 Cyc. 163, 167 (cases cited); *Hughes v. Fisher,* 10 Colo. 383, 15 Pac. 702; *Trulock v. Blair,* 8 Okl. 345, 58 Pac. 1097; *Roy & Titcomb v. Flin,* 10 Ariz. 80, 85 Pac. 725; *Nelson v. Boynton,* 3 Met. (Mass.) 396, 37 Am. Dec. 148; *Dyer v. Gibson,* 16 Wis. 580; *Knisely v. Brown,* 95 Ill. App. 516.)

Where a party receives the property of another and agrees to apply it to the payment of the indebtedness of such other, it then becomes an original obligation and promise. Such a contract could rest entirely in parol, and the right of action upon it would be the same as though it was made in writing. (*Smith v. Caldwell,* 6 Ida. 436, 55 Pac. 1065; 20 Cyc. 173, 174 (cases cited); *Feldman v. McGuire,* 34 Or. 309, 55 Pac. 872; *First Nat. Bank v. Chalmers,* 144 N. Y. 432, 39 N. E. 331.)

Where a corporation employs persons to represent it and permits such persons to act for and make certain representations and agreements concerning matters in which it is directly interested and from which a consideration has passed to it, such corporation cannot thereafter be heard to repudiate such representations and agreements. (31 Cyc. 1237–1240 (cases cited); Am. & Eng. Ency. of Law, 2d ed., 988; *Barnett v. Glutting,* 3 Ind. App. 415, 29 N. E. 154, 927; *Griggs v. Selden,* 58 Vt. 561, 5 Atl. 504; *Webster v. Wray,* 17 Neb. 579, 24 N. W. 207; *Gibson v. Snow Hdw. Co.,* 94 Ala. 346, 10 So. 304.)

Hawley, Puckett & Hawley and Neal & Kinyon, for Respondent.

Neither of the conditions necessary to estoppel exists in this case; the plaintiff has not changed his position by reason of the alleged representations of agency claimed to have been made by Neal and Murphy, and has not, and will not, suffer injury, which he otherwise would not suffer. Neither Neal nor Murphy were agents in fact for the purpose of making any promises of payment to the plaintiff, or to his assignors, nor can they be held to be agents, nor can the respondent be held

bound by way of estoppel by reason of any representations made, as claimed by the plaintiff. (*Harris v. San Diego Flume Co.,* 87 Cal. 526, 25 Pac. 758; *Harrisburg Lbr. Co. v. Washburn,* 29 Or. 150, 44 Pac. 390–392; *Connell v. McLoughlin,* 28 Or. 230, 42 Pac. 218, 219.)

The evidence shows without contradiction that neither Neal nor Murphy had any authority to make the promises alleged, and each of them say they did not make the promises alleged. Evidence shows that the respondent is not liable by reason of any estoppel or by ratification. (*Wilson v. Vogeler,* 10 Ida. 599, 79 Pac. 508.)

The plaintiff does not show that the payment of government warrant made to defendant company in March, 1907, was made with the intent to benefit the plaintiff or any of his assignors. The benefit which was proposed to be given to them was at most only conjectural and incidental; and since the promise made at Washington was not under the proofs made primarily for the plaintiff or any definite one or more of his assignors, the plaintiff cannot recover. (Page on Contracts, secs. 1312, 1313; *C. R. I. & P. R. Co. v. Ottumwa,* 112 Iowa, 300, 83 N. W. 1074, 51 L. R. A. 763, 769; *German State Bank v. Northwestern Water etc. Co.,* 104 Iowa, 717, 74 N. W. 685; *Anglo-American etc. Assn. v. Campbell,* 13 App. D. C. 581, 43 L. R. A. 622, 627; *Constable v. National Steamship Co.,* 154 U. S. 51, 74, 14 Sup. Ct. 1062, 38 L. ed. 903, 914.)

The fact that some creditors of Monarch & Porter were paid out of the bounty of respondent company subsequent to March 12, 1906, cannot create a legal obligation, since under the proofs there was no legal obligation to pay creditors who were so paid. (*Linn v. Alameda etc. Co.,* 17 Ida. 45, 104 Pac. 668.)

"Where the main purpose of the transaction is the promise to pay the debt of another, and no substantial benefit or advantage inures directly to the promisor in consideration thereof, the agreement falls under the ban of the statute, and it cannot be sustained, in the absence of a writing subscribed by the party to be charged." (*Mining & S. Co. v. Stockgrowers' Bank, supra; Mallory v. Gillett,* 21 N. Y. 412, 420;

*Gray v. Herman,* 75 Wis. 453, 44 N. W. 248, 249, 6 L. R. A. 691; *Weisel v. Spence,* 59 Wis. 301, 18 N. W. 165; *Stewart v. Jerome,* 71 Mich. 201, 15 Am. St. 252, 255–258, 38 N. W. 898, 899.)

There was no consideration for the agreement, even if there was such an agreement, and being without consideration, it is unenforceable. Further, the alleged contract was not made in favor of any defined person, but if made, was in favor of "creditors in Idaho," of whom there were many besides the plaintiff and his assignors and the witness Porter. (*Chung Kee v. Davidson,* 73 Cal. 522, 15 Pac. 100; *Savings Bank v. Thornton,* 112 Cal. 255, 258, 44 Pac. 466; Page, Contracts, secs. 1312, 1313; *Chicago, R. I. & P. R. Co. v. Ottumwa,* 112 Iowa, 300, 83 N. W. 1074, 51 L. R. A. 763; *German State Bank v. Northwestern W. & I. Co.,* 104 Iowa, 717, 74 N. W. 685; *Anglo-American S. & L. Assn. v. Campbell,* 13 App. D. C. 581, 43 L. R. A. 622; *Constable v. Nat. S. S. Co.,* 154 U. S. 51, 14 Sup. Ct. 1062, 38 L. ed. 903.)

AILSHIE, J.—This action was brought against John W. Monarch and William S. Porter, as copartners, and also against the Title Guaranty & Surety Co., to recover the sum of $4,433.22, alleged to be due for labor and merchandise furnished the defendants Monarch & Porter by plaintiff and his assignors while Monarch & Porter were engaged in the construction of an irrigation system for the United States government near Rupert in this state. Monarch & Porter were contractors under the government for the construction of an irrigation system on what is commonly known as the Minidoka Reclamation Project. Prior to entering upon the work, the defendant, the Title Guaranty & Surety Co., became surety for the contractors to the effect that they would faithfully perform the work stipulated in the contract. Early in 1906, defendants Monarch & Porter notified the government and also the defendant surety company that they were unable to proceed further with their contract, and the surety company immediately took possession of all the property on the works belonging to Monarch & Porter, and notified the

government that it was completing the contract and would proceed in accordance with the contract had between Monarch & Porter and the United States government.

At the time the surety company took over the contract and undertook to carry out and discharge its terms, there was a large sum due from the government to Monarch & Porter, and there was at that time a disagreement between the contractors and the government as to the true amount due, on account of a diversity of opinion as to the proper estimates to which the contractors were entitled. The government apparently conceded, however, that there was about $35,000 then due the contractors. The contractors were largely in debt for material, supplies and labor, and, among other things, were indebted to the plaintiff herein and his assignors in the sum sued upon. The company retained Monarch and Porter each at $100 per month to carry on the work, and the company sent its agents to supervise the matter of purchases and expenditures and to pay the bills as the same were incurred and to generally superintend the work. During this time the disbursing agent for the company paid some of the debts which had been contracted prior to the time the company took over the works, and it is claimed by the plaintiff in this case that the surety company's agents promised and agreed that the company should pay the claims involved in this action. The trial court found against the plaintiff on this contention, and there is a conflict of the evidence on that point, and if that were the only question in the case, it would determine this appeal in favor of the judgment of the lower court.

There is, however, one state of facts shown by the plaintiff and not contradicted or disputed by the defendant surety company which, in our judgment, is sufficient to hold the defendant company and to consequently require a reversal of the judgment in this case.

John Porter, who, it appears, was acting as attorney for Monarch & Porter, went to Washington, D. C., in February, 1907, for the purpose of securing an adjustment, if possible, of the claim of Monarch & Porter against the government,

and to get the matter settled and secure payment of the balance due. He testifies that at that time he had an interview with the officers of the government and the president and attorney of the surety company with reference to the adjustment and settlement of this claim. Among other things, he testified as follows: "We were there to try and obtain a settlement from the government of all matters between Monarch & Porter and the government; failing in that we were about to return to our homes, but before doing so on that occasion, I don't recall who introduced the subject, but Mr. King (attorney for the company) I think had something to say about it, and I very distinctly remember that I said something in substance to this: 'Now, gentlemen, inasmuch as we could not obtain a final settlement'—they offered to pay us about $35,000 to sign a final voucher. 'There are existing creditors out in Idaho for labor and other materials furnished to Monarch & Porter in the prosecution of their contract covering the work near Rupert. Now, what objections have you, if any, to ordering or recommending the issuance of a warrant'—we called it a warrant, the United States warrant— 'for a part of the amount you confess to be due and are willing to pay, without prejudice to the right of the parties to go home and obtain a final settlement as best they can.' That was the substance of what was said, and Mr. Davise and Mr. Newman said they could see no, objection to that and no one made any objection. Mr. King also agreed in the matter or concurred in it. When Mr. King went to his office that afternoon he wrote the service through the Secretary of the Reclamation Service a letter, of which I have a copy, in which he concurred in it, and it was simply a confirmation of what was said at the conversation. Mr. L. A. Watress, the president of the company, was there also, and he concurred in that arrangement, but said: 'I want the payments to be made as other payments have been made since March, 1906, viz., checks.' The government thereafter in pursuance of the conversation I have just related issued its warrant or check, that is, they said that they had issued it." He further stated that he remained at Washington until after this government war-

rant was issued and turned over to the surety company. The warrant was for the sum of $19,482.67. He says that he thereafter wrote to the surety company, requesting them to bring forward the warrant or the amount of money it represented, and to use it "where it would do the best good," but that they never replied; that he thereafter learned through their agent, Mr. Neal of Boise City, that they had received the money on the warrant.

This evidence, uncontradicted and undisputed as it is in the record, is sufficient to charge the surety company with the debt sued upon. It shows unmistakably that the company received the sum of $19,482.67 from the government, which sum had been earned by Monarch & Porter and was due to Monarch & Porter at the time that the surety company took over the contract and undertook to complete the works. It also shows that they received this money for the use and benefit of the creditors of Monarch & Porter, and with the understanding on the part of Monarch & Porter, who were speaking through their attorney John Porter, that this sum was to be paid over pending a final settlement of the differences between Monarch & Porter and the government for the purpose of meeting the debts of the contractors to laborers and others who had previously furnished material and supplies in the construction of the works. The company could not receive this money which it had not earned and which was due to Monarch & Porter, and was therefore their money, and appropriate it to its own use, and then when sued by one of the creditors for whose use it was paid, plead that there was no consideration or no original promise or contract whereby the company had obligated itself to pay the debt.

It is strenuously argued by counsel for respondent that there was no consideration for either an express or implied promise to pay appellant Beymer his claim out of the money thus received from the government. We answer that contention by saying that the receipt of the money itself is sufficient consideration.

It has also been urged that the action is against the surety company as a surety for Monarch & Porter and not as an orig-

inal promisor or contractor, and that therefore this action could only be maintained in the federal court. That contention is not borne out by the record in the case. The action is against the surety company as an original promisor. The obligation sued upon does not arise out of the contract of surety, but rather out of the independent contract, express or implied as it may be, whereby the surety company received the money to be used and applied for the payment of the creditors of Monarch & Porter. This clearly appears from the evidence of John Porter heretofore referred to. It is urged, however, by counsel for respondent that this particular claim was not mentioned, and the appellant Beymer was not named as a creditor of Monarch & Porter to whom a part of this money should be paid. That appears to be true. It seems that at the time this conversation was had in Washington and the agreement was reached whereby the government was to pay over the $19,000 on its indebtedness to Monarch & Porter, no specific creditor was mentioned, but it was rather paid over for the benefit of the creditors generally. This being the case and it appearing that the surety company received the money and that Beymer and his assignors were in fact creditors of Monarch & Porter at that time and that they have not been paid, the burden is upon the surety company to show that it has in fact paid out and expended the money in the payment of creditors in accordance with the understanding had at the time this agreement was reached when the money was paid by the government.

For the reasons above set forth, the judgment must be reversed, and it is so ordered and a new trial is granted. Costs awarded in favor of appellants.

Stewart, C. J., and Sullivan, J., concur.

Petition for rehearing denied.