(No. 5163. July 6, 1929.)

FIRST NATIONAL BANK OF HAGERMAN, a Corporation, Respondent, v. J. W. PETERSON, Appellant.

[279 Pac. 302.]

C. A. North and Ray Agee, for Appellant.

James & Ryan, for Respondent.

T. BAILEY LEE, J.—Plaintiff and respondent, First National Bank of Hagerman, sued J. W. Peterson, defendant and appellant, to recover a money judgment.

Plaintiff plead in substance: That during the year 1926 Earnest Jacobsen and Niels Jacobsen farmed the Buckeye Ranch belonging to one Foster Crane, and situate in Gooding county, Idaho, Crane to receive a share equal to one-half of all crops raised. That on April 6th the Jacobsens executed their crop mortgage to the International Mortgage Bank, covering their shares of the crop to secure advances not to exceed $2,000; that said bank made advances which with interest figured to December 30, 1926, aggregated $1,737.40; that on July 26th the Jacobsens gave plaintiff a second mortgage to secure a loan of $600 and such advances as plaintiff might supply them, not to exceed $1,250; that, in addition to their promissory note for said $600, they later, on September 3d and October 4th, gave plaintiff their

notes for the respective sums of $500 and $600, moneys advanced, and received a final advancement of $132.16, for which no note was given; the indebtedness with interest figured to December 30 being $1,471.49. That about November 11th, Crane and the Jacobsens, with the knowledge and consent of respondent bank and the International Mortgage Bank, entered into a written contract with the defendant, Peterson, for the sale to him of certain alfalfa hay then in stacks on the Buckeye ranch, for which defendant agreed to pay $11.50 per ton for 729.89 tons, and $10.50 per ton for 71.77 tons, the total of $9,124.31 to be paid immediately, Crane to receive one-half of the purchase money; that plaintiff and the International Mortgage Bank, as owners of said mortgages, consented and agreed to such sale, in consideration whereof defendant agreed to pay plaintiff, as agent for said International Mortgage Bank, the sum due under the latter's mortgage, as well as the amount due plaintiff, defendant being fully informed of the total mortgage indebtedness, and the mortgagees, in consideration of defendant's promise aforesaid, consenting to the sale. That it was agreed and understood by and between Crane, the Jacobsens, the defendant and plaintiff that all the hay money should by defendant be paid plaintiff, and by plaintiff distributed to those entitled to it. That at the time of said sale the Jacobsens retained on the ranch for their own use 30.82 tons of hay, for Crane's share of which they promised to pay him $11.00 per ton or the sum of $179.50; and had theretofore retained from the crop raised certain wheat valued at $39.20, to one-half of which Crane was entitled; that these sums together with that due Crane for his half of the hay amounted to $4,751.25, and was as aforesaid to be paid Crane by the plaintiff out of the purchase money to be received from defendant. That prior to institution of this suit Crane assigned and transferred to plaintiff his claim against defendant by reason of the agreement aforesaid, and that pursuant to such agreement he paid plaintiff $4,500 as follows: Oct. 26th, $1,000; Dec. 2d, $1,000; Dec.

20th, $1,000; Dec. 23d, $500, and on Jan. 20th following 10 days after suit had started, $1,000.

The amount prayed for by plaintiff was $3,661.14. Defendant answered, denying generally, and setting up as affirmative defenses the statute of frauds and four counterclaims. He claimed that the sellers had warranted him 793 tons of merchantable alfalfa hay, the quality of which he was at the time of the sale unable to determine by exterior examination; that approximately 393 tons thereof consisted of cheat grass and weeds so stacked under alfalfa that they could not be detected; that in purchasing the same he had relied upon said warranty; that the sellers agreed upon a purchase price of $8 per ton; that such hay was worthless, to his damage in the sum of $3,144, and that he had already paid on his purchase contract a total sum of $6,630. He further charged that the sellers, contrary to their agreement and duty, caused and permitted their livestock to run over the ranch, devouring and destroying some 40 tons of said hay to his damage in the sum of $300; that they plowed some 250 acres of his leased pasture, causing an additional $500 damage, and that by reason of the remaining pasture having been grazed by the sellers' livestock, he had suffered a final damage of $200.

A jury trial resulted in a verdict of $3,600 in plaintiff's favor; and appeal has been taken from the consequent judgment.

■■ Only a few simple propositions are involved. A determination of them will render immaterial any further specifications of error. After the trial had commenced, defendant requested leave to amend his answer by addition of an allegation that plaintiff theretofore, upon March 5, 1927, had recovered judgment against the Jacobsens upon the three identical notes described in the complaint. This motion was denied; and defendant claims error upon the ground that plaintiff is estopped to sue him, having already elected to pursue his remedy against the original mortgage debtors. The action against the mortgagors arose out of their mortgage contract. The action here is against a purchaser of

mortgaged property upon his individual promise to pay plaintiff the proceeds of the property purchased. The two causes of action being separate and distinct, the doctrine of election has no application. (*Largilliere Co., Bankers, v. Kunz,* 41 Ida. 767, 244 Pac. 404.) The amendment sought did not state a defense and the court committed no error in disallowing it. (*Davis v. State,* 30 Ida. 137, Ann. Cas. 1918D, 911, 163 Pac. 373.)

Defendant vigorously urges that his promise to pay plaintiff was a promise to answer for the debt of another, and that, not being in writing or accompanied by some such memorandum or part payment, such promise was inhibited by the statute of frauds. This contention is apparently due to a misconception of plaintiff's express allegations that defendant promised it that "all the money to be paid by the defendant on account of and for the said purchase of said hay should be by the defendant paid to the plaintiff, to be by it paid out and distributed as the rights of all parties were concerned." No mention here of anyone else's debt! A would-be purchaser of mortgaged property shoulders a debt of his own the moment he secures the mortgagee's consent to the sale in return for his promise to fork over the purchase money. (*Sickman v. Moler, ante,* p. 446, 276 Pac. 309; *Bicknell v. Henry,* 69 Wash. 408, 125 Pac. 156.) An oral promise by a debtor to his creditor to satisfy his debt by paying the amount thereof to some third person designated by the creditor is not within the statute. (*Sherer v. Rubedew,* 11 Ida. 536, 83 Pac. 512; *Beymer v. Monarch,* 19 Ida. 304, 113 Pac. 739; *Mineau v. Imperial Dredge etc. Co.,* 19 Ida. 458, 114 Pac. 23.) While the defendant's creditor, Crane, had no mortgage on the hay, he was a party to defendant's agreement to turn over all the proceeds of the hay to plaintiff, and comes squarely within the rule. Plaintiff, as his assignee, occupies the same position. Nor is there any merit in defendant's contention that his promise was without consideration. The very fact that plaintiff and the International Mortgage Bank consented to the sale, thereby losing their mortgage liens, was

sufficient consideration. As to the unsecured creditor, Crane, he had for the nonce foregone his right to sue and attach, an equally substantial consideration. (27 C. J., p. 151, sec. 34, note 35.)

Appellant's most serious defense is an alleged breach of warranty. Upon that phase of the case the written contract of sale is absolutely silent. And, following the almost universally accepted rule, we do not hesitate to announce that, in the absence of fraud or mistake, a contemporaneous oral warranty cannot be engrafted on a written contract of sale, where such agreement on its face purports to evidence the entire agreement of the parties, irrespective of whether it is silent as to warranty or not. If the written contract contains no warranty, that very fact indicates that the parties intended none. (35 Cyc. 380, note 87; Benjamin on Sales, 625; *Lamb v. Otto,* 51 Cal. App. 433, 197 Pac. 147.) This court practically declared the rule in *Milner v. Earl Fruit Co.,* 40 Ida. 339, 232 Pac. 581. As far as plaintiff and International Mortgage Bank are concerned, even though the alleged warranty were conceded, defendant by getting their consent to the sale, depriving them of their mortgage liens, taking over the hay and consuming it has, as against them, waived all claim for breach of the sellers' warranty. (*California Press Mfg. Co. v. Stafford Packing Co.,* 192 Cal. 479, 32 A. L. R. 114, 221 Pac. 345; 27 R. C. L. 904–909; 40 Cyc. 258, 263.)

The rule as to warranty when the contract is silent is, however, subject to the limitation in Idaho that the seller of personal property impliedly warrants that the goods are merchantable and the bulk of them conformable to sample or description. (C. S., secs. 5687, 5688.) In other words, the statutes inject into the silent contract a warranty strictly limited in its nature. Under the rule as modified by the statutes a party may plead and prove that, as a matter of fact, the goods were neither merchantable nor the bulk of them up to the sample, but beyond that he may not venture. In the instant case the defendant vainly offered to prove fraud and misrepresentation as to the hay's quality on the

part of the sellers, but nowhere had he plead the facts. He contented himself with the general allegation: "That the said sellers sold to this defendant 793 tons of alfalfa hay by the description of alfalfa hay, and they warranted it to be of merchantable quality."

When, under this allegation, the court refused defendant permission to show certain false and fraudulent assurances and representations on the part of the sellers, he was guilty of no error. The defendant was permitted the right heretofore noted to submit proof of the hay's poor quality. Evidently the proof adduced failed to satisfy the jury. And, besides the conflicting evidence on this point, the jury had before it the further facts, that after paying plaintiff $1,000 in Oct. 1926, defendant issued his check for $8,046.34 for the balance, which was dishonored; that, after this suit was instituted on Jan. 10, 1927, the parties agreed on a compromise, the defendant gave plaintiff his check for $3,694 in full settlement, which check was likewise dishonored; that subsequently thereafter defendant paid plaintiff $1,000, that later he issued plaintiff at different times three checks suffering an identical fate, and paid the Jacobsens, notwithstanding his contrary agreement and their alleged swindle of him, the sum of $1,955, which included payment for eight additional tons of Jacobsen hay. And it had defendant's own testimony that Crane, against whose assignee, plaintiff bank, the defendant claims fraud, had never talked to him about the hay at all.

As to defendant's remaining three counterclaims, there was absolute failure to segregate any damage for which Crane might have been individually responsible. Defendant had directly charged his damages to the wrongful acts of the "sellers"; and his proof fell short of establishing what was chargeable to Crane on the one hand and the Jacobsens on the other. Moreover, there was a direct conflict with respect to this matter throughout the trial.

Defendant complains that plaintiff has been allowed to sue as agent of the mortgagee, International Mortgage Bank, the real party in interest. Suffice it to say that no

recovery is sought by such mortgagee. The evidence shows that its claim had been paid by plaintiff, the junior mortgagee, out of funds found by the jury to have been entrusted to it for that very purpose by the defendant himself. Nowhere has defendant by his testimony disputed the righteousness of such claim or its payment.

Appellant's further specifications of error are without merit. Judgment affirmed, costs to respondent.

Budge, C. J., and Givens, Wm. E. Lee and Varian, JJ., concur.