[Civ. No. 8607. First Appellate District, Division Two.—March 13, 1933.]

H. C. AUSTIN, Respondent, v. MORRIS ROBERTS et al., Appellants.

Glickman & Glickman and Tevis Jacobs for Appellants.

Alfred Nelson and J. Raegan Talbot for Respondent.

STURTEVANT, J.—This is an appeal by the defendants from a judgment entered on a verdict rendered against them in an action alleging eviction.

Prior to June, 1927, Morris Roberts and Annie Roberts owned a number of lots contiguous to each other and located in Berkeley, Alameda County. H. Zemon and Celia Zemon owned certain contiguous lots. On the property was located a building that was occupied as a factory. The defendants did not claim title to the building or contents. At about the same time the building and contents were owned by Rev. B. Garfinkle. The defendants executed a lease to the plaintiff on the first day of June, 1927, by the terms of which they leased the land, and the document contained a provision that the building then on the property and any building thereafter to be placed thereon should be and become the property of the tenants. The term of the lease was two years, and that term by a later agreement was extended three years, making a total of five years. The plaintiff entered into possession and for a few months paid $100 per month, the rental reserved in the lease. However, on January 1, 1928, he stopped operating his business and did not pay any rental from January 1, 1928, to August 1, 1928. Some time during the latter part of July, 1928, S. R. Glover, who had theretofore been an employee on the premises, commenced to negotiate with George Hudson in an endeavor to get him interested in purchasing the property. They conferred with the plaintiff and certain business arrangements were discussed, but no agreement was reached. During those discussions it transpired that the title to the personal property was owned by Rev. Garfinkle and that these defendants were the lessors.

On July 28, 1928, George Hudson and S. R. Glover called on Roberts asking for a lease, including an option to buy. They were given an option, but it was never exercised and expired August 7, 1928. No formal lease to them was ever asked or executed. They never paid the owners any rent and never tendered any rent. Immediately after receiving the written option Glover and Hudson went to the property and entered therein. On July 29, 1928, having heard that Glover and Hudson were occupying the property the plaintiff went there and ordered them out. They replied that they had bought the movable property and had agreed to lease the land. Several disputes followed between the plaintiff on the one hand and Glover and Hudson on the other hand at which the defendants were not present and knew nothing until long thereafter. On August 11, 1928, the plaintiff paid to the defendants $600 in back rent. On August 15th he paid $218, that being the balance in back rent and accrued interest as provided in the lease. At the time said payments were made he did not advise the defendants that Glover and Hudson were in the premises nor that they were making any adverse claims to him. However, the plaintiff testified that on the ninth day of August, 1928, he informed the defendant, Mrs. Zemon, and she directed the plaintiff to see Mr. Glickman, who was the attorney for the defendants. He called on Mr. Glickman on August 9, 10 and 11, 1928. On one of those dates he made one of the payments of back rent but did not advise Mr. Glickman that Glover and Hudson were in the premises. When Hudson called on July 28, 1928, Roberts told him that Rev. Garfinkle owned the personal property on the premises and that defendants made no claim to it. Not later than August 1st Hudson bought from Rev. Garfinkle the personal property and received a bill of sale.

Having paid up the back rent in August, from time to time thereafter the plaintiff paid the rent as it accrued. Such payments were made including the month of May, 1929, but thereafter he paid no more rent. Claiming rent due them for the months of June to October, 1929, the defendants assigned their claim to I. Holmok. On the fifteenth day of October, 1929, the latter commenced an action in the justice's court to recover the accrued rent. Thereafter this action was commenced for the purpose of

obtaining an injunction restraining further proceedings in the justice's court and to recover damages for an alleged eviction. As stated above, the verdict was in favor of the plaintiff. The defendants made a motion for a new trial, but the order granting it was not entered until the sixty-first day after the notice of intention to move for a new trial was filed. Assuming that the order came too late and was invalid (*Payne* v. *Hunt*, 214 Cal. 605 [7 Pac. (2d) 302]), the defendants appealed from the judgment.

The defendants claim there is no proof of any act on the part of the defendants which constitutes an eviction. However, we find in the transcript certain statements by Hudson that Roberts told him to go take possession of the plant. Whether that statement was the conclusion of the witness as to the meaning of Roberts' statements in the conversation held on July 29, 1928, does not appear. Therefore we think that at the least there was a conflict in the evidence and a court of review is bound by the verdict of the jury.

In the first count of his complaint the plaintiff pleaded a list of articles of personal property of which he claimed to be the owner and which were in the plant at the time Glover and Hudson entered. He did not attempt to plead that he removed or attempted to remove them because of his eviction and that they were injured thereby, but he alleged the value and claimed such value as damages. On that claim the jury returned a special verdict in the sum of $8,281.90. There is not a particle of evidence that these defendants ever personally exercised or authorized an act of dominion over, or injured, any one of the articles. The uncontradicted evidence in the record is to the effect that on July 28, 1928, Glover and Hudson were told that the defendants made no claim to any of the personal property contained in the plant and did not give any authorizations concerning it.

Furthermore, there was another fatal defect in the proof as to the first count. Rev. Garfinkle obtained his title by accepting a chattel mortgage which was later foreclosed. That document enumerated numerous articles of personal property. On the trial the plaintiff claimed title to some of the personal property. In exhibit "C" he

listed the articles. While a witness on the stand he testified that there were several material duplications between the articl^s enumerated in the chattel mortgage and those in exhibit "C". He did not testify that there were not many more duplications. There was no evidence that there were in the plant at any time duplicates of the same articles. In short, there was no evidence before the jury from which it could be ascertained whether the plaintiff had placed on the premises any additional items of personal property after the execution of the mortgage to Rev. Garfinkle. However, there was evidence that when the mortgage was made to Rev. Garfinkle the parties intended that it should cover all of the personal property then located on the premises. The burden of making the segregation and showing the injury, if any, to any particular article rested on the plaintiff, and in the absence of such proof he was not entitled to recover. (*Croze* v. *St. Mary's Canal Mineral Land Co.*, 153 Mich. 363 [117 N. W. 81, 85]; s. c., 143 Mich. 514 [107 N. W. 92, 94, 114 Am. St. Rep. 677].) The special verdict in the sum of $8,281.90 on the first count is not supported in whole or in part by any evidence.

In his second count the plaintiff sought damages for loss of profits. He alleged that he had certain firm contracts for the sale of the products of the plant for the two succeeding years and that the net profit per ton was $4. He then alleged that the plant could press five hundred tons per month. He prayed damages accordingly. An examination of the record discloses that the plaintiff took the stand and in support of his pleading testified as to the output of the factory, the cost of the output, and the additional fact that the plaintiff had obtained a contract under which he could sell the output over a period of three months at $10 a ton. As to the extent of the output and the cost thereof he based his statements on what had formerly been done in the factory. But prior to July 29, 1928, the plaintiff had had the use of the defendants' land, the use of the personal property of Rev. Garfinkle, and the use of the plaintiff's personal property, if any, which had not been mortgaged. There is no evidence that with the bare land, together with his own personal property, the plaintiff could have operated at all. He testified he did not need all of

Rev. Garfinkle's property. How much of it he did need he did not state. Conceding that plaintiff suffered a loss of profits, there is no evidence showing what part of that loss was caused by the wrongful acts of any of the defendants and what part was caused by the sale of his property by Rev. Garfinkle to Glover and Hudson. The burden of making the proof rested on the plaintiff. It is statutory that "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." (Civ. Code, sec. 3301.) That rule applies to lost profits as well as to other elements of damage. That in an action for eviction under certain circumstances lost profits may be recovered has been directly held. (*Hawthorne* v. *Siegel*, 88 Cal. 159, 167 [25 Pac. 1114, 22 Am. St. Rep. 291].) But the rule applies only under exceptional circumstances. (*California P. Mfg. Co.* v. *Stafford P. Co.*, 192 Cal. 479, 485 [221 Pac. 345, 32 A. L. R. 114].) He who would claim lost profits must show the exceptional circumstances supporting his claim. In 17 C. J. 758, the author says: "Where there is evidence as to damage from various causes, as to a portion of which defendant cannot be held responsible, and no evidence as to the portion of the damage resulting from the separate causes, the proof is too uncertain to permit the jury arbitrarily to apportion a part or all of the proved damages, to the acts for which defendant is responsible." *Smith* v. *Billings Sugar Co.*, 37 Mont. 128 [94 Pac. 839, 15 L. R. A. (N. S.) 837], involved a controversy regarding an alleged breach of contract providing for the management of the planting, growing and marketing of sugar beets. On page 841 [of 94 Pac.] the Supreme Court of Montana said: "The duty to furnish the laborers in proper time devolved upon the plaintiff himself; and, since the complaint alleged that the damages resulted from the failure to furnish the laborers in proper time, coupled with the company's failure to properly instruct them, it is impossible to say what, if any, portion of the damages resulted from the fault of the company, and what portion from the fault of the plaintiff himself." In the case of *Smuggler-Union Min. Co.* v. *Kent*, 47 Colo. 320 [112 Pac. 223], the court was considering an action in eviction. The plaintiffs had been the lessees of a part of a mine. In the mine were several shafts. Under the terms of their lease the plaintiffs should have taken the

ore out of the seventh level and down the Union shaft. However, they were given the privilege to take two lots of ore out of a different shaft. In attempting to prove loss of profits they introduced proof regarding the costs, etc., in mining those two particular lots. Speaking of that proof, on page 227, the court said:

"Plaintiffs may have produced enough evidence as to the profits they made out of the two lots of ore which they mined and milled by special permission of defendant; but they failed to prove that they would have made any profits, even out of these shipments, had they mined and removed the ores as they were required to do by the lease." *Chicago, B. & Q. R. Co.* v. *Gelvin,* 238 Fed. 14 [L. R. A. 1917C, 983], was an action for damages for negligently allowing a fire to spread. The fire spread over the pasture of the plaintiff. In his proof he sought to recover lost profits as an element of his damage. On page 988 the court said:

"Instead of this record, it was incumbent upon the plaintiff to show, with reasonable certainty, what damage flowed from the alleged injury, by showing the value of the cattle immediately before and immediately after the injury, at the farm of the plaintiff. The record showing different conditions occurring subsequent to the fire, naturally affecting the gain in weight of these cattle, for which it is conceded the defendant could not be held responsible, without any proof of how much of the damage resulted from these conditions as distinguished from the damage resulting from the alleged injury, with nothing in the way of testimony of any witness pretending to even estimate the proportion of the damage resulting from either of the causes, is far short of that reasonable certainty required by law, and upon such a record a jury cannot arbitrarily apportion a part, or all, of the proven damages to the cause for which the defendant is responsible (*Knowlton* v. *Chicago & N. W. R. Co.,* 115 Minn. 71 [131 N. W. 858]), and the verdict of the jury upon the first cause of action, predicated upon a consideration of this evidence, is erroneous." (See, also, *First Nat. Bank* v. *Peterson,* 47 Idaho, 794 [279 Pac. 302, 305].) In the instant case the plaintiff introduced no proof showing what profits were lost by reason of the acts of the defendants. Nevertheless the jury returned a verdict in his favor for $3,000 as compensation for

lost profits. It was clearly a guess and was not supported by any evidence.

The plaintiff has appealed from the order granting a new trial. It is supported by the transcript brought up by the defendants. In view of what we have said regarding the appeal from the judgment, it is clear that there is no need to discuss the plaintiff's appeal.

The judgment is reversed.

Spence, Acting P. J., and Goodell, J., *pro tem.*, concurred.