[L. A. No. 23725. In Bank. Nov. 10, 1955.]

GRIFFITH COMPANY (a Corporation), Appellant, v. SAN DIEGO COLLEGE FOR WOMEN (a Corporation), Respondent.

Gibson, Dunn & Crutcher, Ira C. Powers and Richard L. Wells for Appellant.

Bodkin, Breslin & Luddy, Martin & Mahedy and O'Neill P. Martin for Respondent.

Joseph Scott as Amicus Curiae on behalf of Respondent.

CARTER, J.—A rehearing was granted in this case so that plaintiff's supplemental reply brief might be considered by this court. We have examined said brief and find nothing therein which compels any change in our decision as heretofore filed.

Plaintiff Griffith Company appeals from an order denying its motion to vacate an arbitrators' award and from a judgment entered on an order confirming the award in favor of defendant college.

A construction contract entered into between the parties provided for the erection of certain college buildings for defendant by plaintiff on a cost plus and maximum price basis. The contract provided that all disputes subject to arbitration should be settled by arbitration under the "Standard Form of Arbitration Procedure of the American Institute of Architects." The work was delayed beyond the date set for substantial completion and a dispute arose. Plaintiff demanded arbitration and eventually an arbitration panel was agreed upon: Mr. McKittrick, a contractor, was named by the plaintiff; Mr. J. Howard Ziemann, an attorney, was named by the defendant; and the two nominees selected the third, Paul B. Young, as chairman. After several hearings at which evidence and briefs were considered, Mr. Young, as chairman, with Mr. Ziemann concurring, agreed on an award in defendant's favor. Mr. McKittrick dissented in a written opinion in which he (among other things) accused Mr. Young of not having arrived at his decision by his own independent thought but through the work of an "outside attorney," or, in other words, of misconduct sufficient to justify setting aside

the award. Mr. McKittrick's affidavit, as well as those of Mr. Young and Mr. Ziemann are on file.

We said in *Sapp* v. *Barenfeld*, 34 Cal.2d 515, 523 [212 P.2d 233], that "although an arbitrator cannot impeach the award by testifying to his fraud or misconduct, his testimony is admissible to show what matters were submitted for decision and were considered by the arbitrators." This is, apparently, the general rule. In Commercial Arbitrations and Awards, by Sturges, it is said: "While ordinarily an arbitrator may not testify to his own acts of mistake or misconduct any more than he may to those of the members of the arbitral board generally, to establish a cause sufficient to defeat or vacate an award, it has been held that the complaining *party* may take such testimony of an arbitrator when it implicates the other *party* in the alleged misconduct, partiality, bias, or corrupt action.

"Again, in the case of a dissenting arbitrator, the award not being his, it is uniformly held that he may testify as to the bias, partiality or other misconduct of the arbitrators who rendered the award in question the same as any other witness." (§ 365, p. 787.)

McKittrick, the dissenting arbitrator, by affidavit, stated that Mr. Young, prior to full discussion by the panel members, had submitted the matter to an unnamed attorney who had drafted an opinion; that Mr. Young, at a meeting, signed the original and gave it and a copy thereof to McKittrick; that Mr. Young and Mr. Ziemann desired then and there to make an award but because of Mr. McKittrick's opposition, agreed to a further meeting. At the next meeting, McKittrick moved, on behalf of plaintiff, to reopen the proceedings to permit further testimony on the "items of damage"; that the motion was denied. It is also claimed that Mr. Young and Mr. Ziemann did not sign the award in each other's presence; that the acknowledgment of Mr. Young's signature was made prior to the time he signed it; that the award was not delivered simultaneously to all arbitrators; that the award went outside the issues of the arbitration proceeding. It is also contended that Mr. Young was guilty of prejudicial misconduct in refusing to reopen the proceedings to permit additional testimony on the part of Mr. McKittrick.

Mr. Young's affidavit shows that he took his tentative written opinion to the meeting with him; that it was in a sealed envelope which was not opened until after four and one-half hours of discussion between the three of them. It

was also averred that hearings had been held on May 20th, June 15th, June 22d, June 23d, June 24th, and July 13th, July 14th, July 15th, July 16th; that briefs were filed on the law and the facts. It is further stated that after hearing the evidence and considering the briefs, Mr. Young formed a tentative opinion of his own and that he then consulted an attorney with whom he had previously discussed the matter so that his opinion could be checked to determine that "it was not grossly erroneous so far as the law was concerned"; that upon being advised by the attorney that his opinion was not erroneous, he dictated the tentative opinion to his secretary from his own notes; that the language thereof was his own except for the citations of legal authority which he had obtained from the attorney; and that "said opinion and the award of the arbitrators were the result of affiant's own judgment and that of said J. Howard Ziemann.

"That during the course of the hearings affiant had informed both his fellow arbitrators that he intended to seek legal confirmation of whatever opinion he might arrive at, and no objection was made by either."

Article 40 of the agreement between the parties provides that any dispute subject to arbitration shall be submitted to arbitration in accordance with the provisions of the Standard Form of Arbitration Procedure of The American Institute of Architects and the "prevailing arbitration law."

It is argued by plaintiff that Mr. Young's conduct in privately consulting an attorney constituted misconduct such as would justify vacating the award. In *Sapp* v. *Barenfeld*, *supra*, 34 Cal.2d 515, 521, substantially the same point was raised. We said there: "[T]he arbitrators, to determine the amount of the award, consulted ex parte with C. L. Weeks, a skilled cost appraiser, for an estimate of the labor and material cost of remedying the defects. They checked his estimate with several building supply firms and adopted it in making their award after this independent investigation. The award was the result of the arbitrators' own judgment, based, however, on information acquired in this manner.

"There is no error in such procedure. Although a hearing is required on disputed questions of fact, arbitrators may inform themselves further by privately consulting price lists, examining materials and receiving cost estimates. (Sturges, Commercial Arbitration and Awards, § 217, p. 495.) This procedure may be ex parte, without notice or hearing to the parties, for 'it is entirely proper for arbi-

trators, in a case requiring it, to obtain from disinterested persons of acknowledged skill such information and advice in reference to technical questions submitted to them, as may be necessary to enable them to come to correct conclusions, provided that the award is the result of their own judgment after obtaining such information.' (1 Mechem, Agency, § 310, p. 229; *Omaha* v. *Omaha Water Co.*, 218 U. S. 180, 198 [30 S.Ct. 615, 54 L.Ed. 991]; *California Annual Conf. of M. E. Church* v. *Seitz*, 74 Cal. 287, 295 [15 P. 893]; *Dore* v. *Southern Pac. Co.*, 163 Cal. 182, 189 [124 P. 817]; *Simons* v. *Mills*, 80 Cal. 118, 120 [22 P. 25]; *Foster* v. *Carr*, 135 Cal. 83, 86 [67 P. 43]; *Rives-Strong Bldg., Inc.* v. *Bank of America*, 50 Cal.App.2d 810, 814-817 [123 P.2d 942]; *Gord* v. *Harmon & Co.*, 188 Wash. 134, 140 [61 P.2d 1294]; *Liggett* v. *Torrington Bldg. Co.*, 114 Conn. 425, 432 [158 A. 917]; *Koepke* v *E. Liethen Grain Co.*, 205 Wis. 75, 77 [236 N.W. 544]; *Twin Lakes Reservoir & Canal Co.* v. *Platt Rogers, Inc.*, 112 Colo. 155 [147 P.2d 828]; *Bangor Savings Bank* v. *Niagara Fire Ins. Co.*, 85 Me. 68, 76-77 [26 A. 991, 35 Am.St.Rep. 341].) It is immaterial whether the subject of the appraisal is the only matter in dispute or is part of a broader submission. (*Gord* v. *Harmon & Co., supra; Hegeburg* v. *New England Fish Co.*, 7 Wn.2d 509 [110 P.2d 182]; *Bangor Savings Bank* v. *Niagara Fire Ins. Co., supra*; Sturges, *supra*, § 217, pp. 495-498.)'' (See also *Sampson Motors, Inc.* v. *Roland*, 121 Cal.App.2d 491, 494 [263 P.2d 445].)

█ In view of the foregoing, there appears to be no good reason why Mr. Young should not have talked the matter over with an attorney to check his legal conclusions. There was no showing made by plaintiff that the attorney was not a disinterested person. █ We made no requirement in the Sapp case that all arbitrators must act as a body when seeking independent advice and it would appear that such a requirement would be unnecessarily burdensome and could lead to absurd results. █ The conclusion of the trial court in refusing to vacate the award is an implied finding that he believed the affidavit of Mr. Young wherein it was stated that his opinion was reached through his own independent thought and was not that of any other person. █ ''An appellate court will not disturb the implied findings of fact made by a trial court in support of an order, any more than it will interfere with express findings upon which a final judgment is predicated. When the evidence is conflicting, it will be presumed that the court found every fact necessary to support

its order that the evidence would justify. So far as it has passed on the weight of evidence or the credibility of witnesses, its implied findings are conclusive. This rule is equally applicable whether the evidence is oral or documentary. ▮ In the consideration of an order made on affidavits involving the decision of a question of fact, the appellate court is bound by the same rule as where oral testimony is presented for review.'' (4 Cal.Jur.2d § 614, p. 495; *People* v. *Western Meat Co.*, 13 Cal.App. 539, 544 [110 P. 338]; *Maselli* v. *E. H. Appleby & Co., Inc.*, 117 Cal.App.2d 634, 638 [256 P.2d 618]; *Jones* v. *Lindsey*, 114 Cal.App.2d 237, 239 [250 P.2d 153]; *Schreiber* v. *Hooker*, 114 Cal.App.2d 634, 640 [251 P.2d 55]; *Paulekas* v. *Paulekas*, 117 Cal.App.2d 73, 77 [254 P.2d 941].) ▮ When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed. (*Hayutin* v. *Rudnick*, 115 Cal.App.2d 138, 140 [251 P.2d 707].)

Paragraph 14 of the Standard Form of Arbitration provides that the award is to be made in writing and signed by a majority of the arbitrators and that it shall be acknowledged when the prevailing law so requires. It is contended by plaintiff that Mr. McKittrick was not permitted to participate in the making of the award, or to see a copy thereof, and that the arbitration panel did not meet when the award was made. Mr. Young's affidavit shows that at the close of the meeting when he opened his written opinion, he gave copies thereof to each of the other arbitrators; that no award was made that day, but a meeting was arranged for the following day; that he and Mr. Ziemann signed the opinion that day; that the next day a meeting was had with Mr. Young and Mr. Zeimann adhering to the conclusion previously reached and Mr. McKittrick dissenting therefrom; that Mr. Young asked Mr. Ziemann to prepare the formal award since he was an attorney; that Mr. McKittrick said he would not sign the award. It was further stated that a tentative meeting was arranged for the following day to sign the award but that Mr. Young was unable to be there because of another business engagement; that Mr. Ziemann prepared and signed the award and delivered it by messenger to Mr. Young's office where it was signed, having been previously acknowledged

by the notary in Mr. Ziemann's office. ▮ Plaintiff's contention is, apparently, that rule 14 (heretofore set forth) required all the arbitrators to have been together at the time the award was signed. Rule 14 does not specifically so require. Mr. McKittrick had announced his refusal to sign the award and that he would dissent therefrom. There appears to be no reason why it was necessary that he be present when the other two arbitrators signed. It has been held that the arbitrators, having met in consultation at the time of their final decision of the case upon the merits, were not required to meet again for the mere purpose of signing the award. (*Campbell* v. *Inhabitants of Upton,* 113 Mass. 67, 71; *Robinson* v. *Bickley,* 30 Pa. 384; *Sturges, supra,* § 219, p. 509.)

▮ Section 1287 of the Code of Civil Procedure provides that the award must be in writing and acknowledged or proved in "like manner as a deed for the conveyance of real estate." While the manner in which Mr. Young signed the award is not approved practice, plaintiff has not shown that it was prejudiced thereby.

In *Williston* v. *City of Yuba City,* 1 Cal.App.2d 166, 169. 170 [36 P.2d 445], an acknowledgment was taken by an officer out of the presence of the grantor. The court held: "The deed of conveyance was not invalid between the parties thereto merely because it was not acknowledged by the grantors. The purpose of an acknowledgment to a deed is evidentiary in character and is required so as to entitle the instrument to be recorded or to render it competent evidence without further proof. (9 Cal.Jur. 113, § 18; *Gordon* v. *City of San Diego,* 108 Cal. 264 [41 P. 301]; *Knaugh* v. *Baender,* 84 Cal.App. 142 [257 P. 606]; Civ. Code, § 1161.) The fact that the deed in this case was irregularly acknowledged out of the presence of the grantors is immaterial except for the purpose of determining whether the grantors intended to presently convey their title to the land therein described when the deed was handed to Mr. Weis for the purpose of delivering it to the grantee. There is sufficient evidence in the record to support the finding of the court to the effect that the deed was delivered by the grantors for the purpose of conveying title to the property without any condition or contingency attached thereto and that the delivery of the deed was absolute." (See also 1 Cal.Jur.2d, § 28, p. 500.)

▮ Rule 14 of the Standard Form of Arbitration pro-

vides that the award shall be delivered simultaneously to each party. Mr. Young's affidavit shows that shortly before 4 p. m. on October 2d, he received the award which had been signed and acknowledged by Mr. Ziemann; that shortly thereafter he received a phone call from plaintiff's attorneys and that he had his secretary dictate the award to the attorneys' secretary; that thereafter he called defendant's attorney and announced that the award had been signed by him and Mr. Ziemann; that thereafter a copy of the award was delivered to Mr. McKittrick and the original mailed to defendant's attorney. It appears, therefore, that each party was notified at the earliest possible opportunity and as nearly simultaneously as could be expected. Rule 14 was substantially complied with.

It is next contended that Mr. Young was guilty of misconduct in refusing Mr. McKittrick's motion to reopen for the purpose of producing additional evidence. Rule 11 of the Standard Form provides that ''The hearing may be reopened at any time before the award is required to be made at the discretion of the arbitrators or upon the request of a party for good cause shown.'' After Mr. Young had disclosed his tentative opinion, Mr. McKittrick asked for a continuance until the next day to give him an opportunity to consult with ''his people.'' At the time set for the continuance he moved to reopen. He made no offer of proof by affidavit. Rule 11 leaves the matter of reopening to the discretion of the arbitrators, or a majority thereof, and plaintiff has not shown what competent and material evidence was excluded by reason of the denial of its motion (*Moore* v. *Griffith*, 51 Cal.App.2d 386, 389 [124 P.2d 900]), or that Mr. Young and Mr. Ziemann were guilty of an abuse of discretion.

Plaintiff contends that the decision is arbitrary, harsh and inequitable; that it is contrary to law; and that it is not coextensive with the issues submitted. The merits of the controversy between the parties are not subject to judicial review. (*Pacific Vegetable Oil Corp.* v. *C. S. T., Ltd.*, 29 Cal.2d 228, 233 [174 P.2d 441]; *Kerr* v. *Nelson*, 7 Cal.2d 85 [59 P.2d 821]; *Loving & Evans* v. *Blick*, 33 Cal.2d 603 [204 P.2d 23]; 5 Cal.Jur.2d § 52, p. 120.)

It was held in *Crofoot* v. *Blair Holdings Corp.*, 119 Cal. App.2d 156, 165 [260 P.2d 156], that ''The opinion and award of the arbitrator are the sole guide to the evidentiary facts upon these appeals. The court is not called upon to review

the evidence produced before the arbitrator, and such is not included in the record on appeal. The record consists of the opinion and award of the arbitrator, of the pleadings in the various court actions, and the proceedings upon confirmation of the award.''

The *"Opinion of the Chairman, Board of Arbitration"* sets forth the issues and result as follows: ''GRIFFITH COMPANY, a corporation, hereinafter referred to as the Contractor, entered into an agreement with San Diego College for Women, a corporation, hereinafter referred to as the Owner, on July —, 1950, whereby the Contractor agreed to furnish labor and materials for the purpose of constructing a College for women in the City of San Diego. Under the agreement work was to begin on August 1, 1950, and the construction was to be substantially completed by September 1, 1951. The Contractor agreed to perform its services for the cost of the work and materials furnished, plus a 3 per cent fee, the total price not to exceed $2,995,000.00. The project was actually not completed until October of 1952, about 14 months beyond the contractual termination date, and the Contractor's records indicate that the cost for labor and materials exceeded the contract price, plus authorized extras in the sum of $152,-239.58. In this proceeding the Contractor alleges that the Owner's delay, in furnishing detailed drawings was the sole cause for the over-all delay in completing the job, and resulted in damage to the Contractor in the amount expended in excess of the contract price, plus profit, in the sum of $108,190.37, or total damages in the sum of $260,429.95.

''The evidence discloses that the owner requested several contractors to bid on the job and that Griffith Company submitted the lowest bid. However, the total amount of the Griffith bid exceeded the Owner's budget, and the Owner through its Architect, conferred with Griffith Company for the purpose of eliminating certain items in order to reduce the total cost of the job. After a figure had been reached, which was agreeable to the Owner, the Architect prepared an addendum to the specifications setting forth the changes that were to be made. On page 1 of addendum 3, it is provided that:

'' 'Original plans will be revised to incorporate the above changes.'

''Both the Owner and the Contractor were fearful that certain materials might not be available unless the job was begun immediately because of the Korean war which had just

begun. Consequently, the Contractor agreed to go ahead and start the work without waiting for final working drawings incorporating the changes that were made with the understanding that the drawings would be provided during the progress of the work. The Owner offered evidence to prove that the Architect had informed the Contractor that the working drawings would not be completed for six months. This, the Contractor denies. Article 3 of the contract provides that:

" 'The Architect shall furnish with reasonable promptness, additional instructions, by means of drawing or otherwise, necessary for the proper execution of the work.'

"Actual construction on the job site began on August 8, 1950. A carpenters' strike prevented the Contractor from obtaining skilled carpenters until September 7, 1950. The Contractor introduced evidence to prove that because of delays in obtaining plans the work progressed very slowly during the first four months of the building operation. Consequently, on December 12, 1950, the Contractor wrote to the Architect complaining of these delays and, among other things, stated:

" 'Lack of plans and information will require us to take more than three months to do work which normally should require three weeks.

" '. . . This type of operation is expensive and accomplishes little. . . .

" 'At the present time lack of plans and information prevents us from starting any other units. . . .'

"In this letter the Contractor requested a conference with the Owner, and such a conference was subsequently held The subject matter of that conference is in dispute but. thereafter, and on December 18, 1950, the Architect wrote to the Contractor and stated that he believed that the conference had answered the problems raised in the letter of December 12. On December 19, 1950, the Owner granted the Contractor a·three months' extension of time within which to complete the project. It should be noted no increase in contract price was demanded or received by the contractors at the time this Change Order was formalized.

"The Contractor's evidence indicates that the job was delayed throughout its entire life because of the Owner's failure to promptly furnish plans and information necessary to the Contractor. Some 52 Change Orders were executed. but these are not included in the Contractor's claim since prices

were adjusted at the time each Change Order was executed. No evidence was introduced indicating the Contractors requested time extensions by reason of the changes, with the exception of Change Order No. 3 extending the contract time to December 1, 1951. No evidence was introduced indicating the Contractors were not satisfied with the various Change Order monetary increases. No evidence was introduced indicating the Contractors requested a Change Order for the delays caused by the late delivery of plans and details during the construction period of the contract.

"The Owner has introduced evidence to prove that many other factors, such as labor disputes, material shortages, contractor delays, etc., contributed to the over-all delay of the job. The Chairman of the Board is of the opinion that all of these factors contributed in some degree to delay the job.

*"It is the Chairman of the Board's conclusion that the Contractor may not recover because, First, it did not comply with the provisions in the contract pertaining to the filing of claims, and, Second, he is unable to ascertain what proportion of the costs, over and above the contract price, is attributable to the Owner's neglect, and what proportion is attributable to other factors.*

"First, he decides that Article 16 of the contract has no application to these proceedings. That article is limited to claims for extra costs caused by positive instructions, not by the failure to give instructions. Article 31 of the contract does apply. It provides that either party shall be reimbursed for damages caused by the

" 'wrongful act or neglect of the other party, or of anyone employed by him,

" 'Claims under this clause shall be made in writing to the party liable within a reasonable time at the first observance of such damage, and not later than the time of final payment. . . .'

"The letter of December 12, 1950, does indicate dissatisfaction with the manner in which plans were furnished. The letter also indicates that 'this type of operation is expensive and accomplishes little.' But the letter does not specifically register a claim. It requests a conference. Immediately after the conference a three month extension of time was granted, with no increase in contract price, and at least to some degree, this extension of time was predicated upon the carpenters' strike over which the Owner, of course, had no control.

Thereafter, no further written notice was given by the Contractor either to the Architect or to the Owner directly. There is evidence to indicate that many oral complaints were made, but it is not unusual in a large construction operation for both the Architect and the Contractor to orally complain to one another about the progress of some of the work. In the opinion of the Chairman of the Board such oral complaints would not put the Owner on notice of the fact that his actions were causing excessive costs which would result in the assessment of damages against him. The purpose of Article 31 is to give the Owner notice so that he may change his course of conduct if, in fact, that course of conduct will result in additional costs. I believe that the Owner never had this opportunity in this case.

"Moreover, the Contractor agreed to start the operation without the customary working drawings usually available at the outset of a job. There was bound to be some delay because of this and, hence, the mere fact that the job was being delayed would not in itself give the Owner notice that his activities might be contributing to that delay.

"But irrespective of the question of liability, *we could not award damages in this case because the Contractor has not established what proportion of the total damages were due to the failure of the Owner to promptly furnish plans.* As I understand the law, this Board is not empowered to arbitrarily assess damages. Article 1 (g) of the contract provides that:

" 'The law of the place of the building shall govern the construction of this contract.'

"Section 3300 of the California Civil Code provides that:

" 'For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment *proximately caused thereby,* or which in the ordinary course of things, would be likely to result therefrom.' (Emphasis supplied.)

"Section 3301 provides:

" 'No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and *origin.*' (Emphasis supplied.)

"In the case of *Austin* v. *Roberts,* 130 Cal.App. 328, 333 [20 P.2d 97], the Court stated:

" 'Conceding that plaintiff suffered a loss of profits, there is no evidence showing what part of that loss was caused by the wrongful acts of any of the defendants and what part

was caused by the sale of his property. . . . The burden of making the proof rested on the plaintiff.' See also *J. J. Kelly Co.* v. *United States* (Ct.Cl., 1947), 69 F.Supp. 117, 118.

"As a matter of fact Chairman of the Board concludes that the execution of 52 Change Orders caused some delay. We also conclude that certain labor disputes, material shortages, difficulties with suppliers, and contractor delays contributed to some extent in the over-all delay in completing the job. Since I was unable to ascertain what portion of the over-all delay is attributable to these various factors I am unable to determine the Contractor's damages, if any.

"The Chairman of the Board, therefore, recommends this Board decide in favor of the defendant, SAN DIEGO COLLEGE FOR WOMEN, and against the plaintiff, GRIFFITH COMPANY. Both parties shall pay their costs and Attorneys' fees."

This opinion was signed by Mr. Young and concurred in by Mr. Ziemann. The award followed the recommendation of the opinion.

It is at once obvious from a reading of the chairman's opinion that it is not "arbitrary, harsh and inequitable" any more than any other decision is so to the losing party. The decision is argued to be contrary to law in that Mr. Young's opinion sets forth that he was unable to ascertain what proportion of the damages was attributable to defendant's fault and that he was therefore unable to determine the damages proximately caused thereby to plaintiff.

In *Sapp* v. *Barenfeld, supra,* 34 Cal.2d 515, 523, we held: "Arbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action. (*Gerdetz* v. *Central Oregon Irr. Co.,* 83 Ore. 576, 580 [163 P. 980]; *Everett* v. *Brown,* 120 Misc. 349 [198 N.Y.S. 462, 465]; *Koepke* v. *E. Liethen Grain Co.,* 205 Wis. 75, 80 [236 N.W. 544].) The claim must be expressly raised at some time before the award." The arbitrators in the instant case were not specifically required to act in conformity with other than the "prevailing arbitration law." In *Crofoot* v. *Blair Holdings Corp., supra,* 119 Cal.App.2d 156, 189, it was held: "Even if the arbitrator decided this point incorrectly, he did decide it. The issue was admitted properly before him.

Right or wrong the parties have contracted that such a decision should be conclusive. At most, it is an error of law, not reviewable by the courts." It appears, however, from *Allen* v. *Gardner*, 126 Cal.App.2d 335, 340 [272 P.2d 99], that the chairman did not commit an error of law. ▪ It was there said: "Uncertainty as to the fact of damage, that is, *as to the nature, existence or cause of the damage, is fatal.*" (Emphasis added.) The chairman's opinion specifically sets forth the finding that plaintiff had not established what proportion of the total damages were due to the fault of the defendant. It appears therefore that the nature, existence or cause of the damage was uncertain.

▪ Plaintiff's contention that the award was not coextensive with the issues submitted is also without merit. It appears from the record (Mr. Young's affidavit of November 6, 1953) "That said board of arbitrators heard and determined (adversely to defendant) objections to the statement of issues presented by plaintiff on May 20, 1953, and heard and considered plaintiff's evidence in said matter on June 15th, June 22nd, June 23rd and June 24th, and defendant's evidence on July 13th, July 14th, July 15th and July 16th. . . ." Plaintiff's contention appears to be an attempt to reargue the issues and the evidence. ▪ As we have heretofore stated, the merits of the controversy between the parties are not subject to judicial review (*Pacific Vegetable Oil Corp.* v. *C. S. T., Ltd., supra,* 29 Cal.2d 228, 233). ▪ "It must be presumed `That all matters within . . . a submission to arbitration were laid before the arbitrators and passed upon by them.' (Code Civ. Proc.,§ 1963, subd. 18.)" (*Crofoot* v. *Blair Holdings Corp, supra,* 119 Cal.App.2d 156, 192.)

▪ Further, "Under the 1927 statute, it is well settled that both before the superior and appellate courts every intendment of validity must be given the award and that the burden is upon the one claiming error to support his contention. (*Popcorn Equipment Co.* v. *Page,* 92 Cal.App.2d 448 [207 P.2d 647].)" (*Crofoot* v. *Blair Holdings Corp., supra,* at page 185.)

▪ There is no merit to plaintiff's contention that the award was not that of the arbitration panel but of Mr. Ziemann. It is true that Mr. Ziemann, being an attorney, prepared the formal award but that award merely followed the opinion prepared by Mr. Young in which Mr. Ziemann concurred. It follows, therefore, that the award was that of a majority of the board of arbitration.

Other contentions made by plaintiff do not merit discussion. The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

Schauer, J., concurred in the judgment.

EDMONDS, J.—To me, the record in this case compels the conclusion that the arbitration proceeding was not the full and fair and unbiased hearing to which the parties were entitled under the fundamental principles of fair trial. To hold that one arbitrator, unknown to his associates, may seek the advice of an attorney and then use the opinion prepared by that attorney as the award of the arbitrators violates every principle of fair trial. If arbitration is to have the place in the administration of justice to which it is entitled, it must be conducted in accordance with the same rules of law which apply to judicial proceedings, insofar as the integrity of decision is concerned.

The identity of the consulting attorney has never been disclosed. For all that appears, he may have been a partisan who acted with entirely improper motives. Secret consultation by a judge with a lawyer who prepared his opinion for him would meet with the unqualified disapproval of bench and bar. I see no difference between that situation and the one shown in this case.

For these reasons and those stated by Mr. Justice Ashburn in the opinion upon which the District Court of Appeal set aside the award, (Cal.App.) 280 P.2d 203, I would make the same order.

Appellant's petition for a rehearing was denied December 8, 1955. Edmonds, J., was of the opinion that the petition should be granted.