UNITED STATES of America for the Use and Benefit of CHICAGO BRIDGE & IRON COMPANY, an Illinois corporation, Applicant,

v.

ETS–HOKIN CORPORATION, a California corporation, and the Travelers Indemnity Company, a Connecticut corporation, Respondents.

In the Matter of the arbitration between ETS–HOKIN CORPORATION, a California corporation, and the Travelers Indemnity Company, a Connecticut corporation, Petitioners,

and

CHICAGO BRIDGE AND IRON COMPANY, an Illinois corporation, Respondent.

Nos. 44430, 44552.

United States District Court
N. D. California.

Dec. 30, 1966.

Ryley, Carlock & Ralston, Frank C. Brophy, Jr., Phoenix, Ariz., Pillsbury, Madison & Sutro, James J. Walsh, San Francisco, Cal., for Chicago Bridge & Iron Co.

Feldman, Waldman & Kline, Laurence N. Walker, Leo E. Borregard, San Francisco, Cal., for Ets-Hokin Corp. and Travelers Indemnity Co.

## ORDER CONFIRMING AWARD OF ARBITRATORS

ZIRPOLI, District Judge.

The Court has before it the application of Chicago Bridge & Iron Company for an order setting aside an arbitration award (Civil No. 44430) and the petition of Ets-Hokin Corporation to confirm the same award (Civil No. 44552), which have been consolidated and submitted on the record now before the Court.

The jurisdiction of this Court arises under the provisions of Sections 1, 2, 10 and 11 of Title 9 U.S.C., and alternatively, under the provisions of Section 1332 of Title 28 U.S.C., in that all parties hereto are of diverse citizenship and the amount in controversy exceeds $10,–000.

■ Since Chicago Bridge & Iron Company must carry the burden in seeking to set aside the arbitration award, it will hereinafter be referred to as "plaintiff", and Ets-Hokin Corporation will be referred to as "defendant". See American Almond Products Co. v. Consolidated Pecan Sales Co., 144 F.2d 448, ·450, 154 A.L.R. 1205 (2 Cir. 1944). The Travelers Indemnity Company, the other party to these proceedings, had agreed prior to the arbitration to be bound by any award made by the arbitrators.

Defendant entered into a contract with the United States to perform certain construction work at Glen Canyon Dam in Arizona. Defendant subcontracted part of this obligation to plaintiff. During the course of the contract a dispute arose as to the obligation of plaintiff to prestress certain spiral cases in the installation of turbine units. Plaintiff refused to perform the prestressing, and the defendant deducted the cost of this

work from its payment obligations under the subcontract. Plaintiff thereafter filed a Miller Act (40 U.S.C., Sections 270a–270d) lawsuit in the United States District Court for the District of Arizona. On defendant's motion this action was stayed pending arbitration. The order staying this action provides as follows:

It is ordered that defendant's motion for stay of action pending arbitration is granted, only as to specific items raised on the motion, subject to either party coming back to this Court for relief by reason of any delay in such arbitration.

The parties submitted their grievances to arbitration before a Board, which met in San Francisco. The Board consisted of three engineers: Mr. J. P. Murphy, selected by defendant; Mr. L. A. Elsener, selected by plaintiff; and Mr. J. T. Corwin, Jr., selected by the first two named. After hearing held on July 6 and 7, 1965, the Board, on August 30, 1965, in a written memorandum signed by two of its members, Murphy and Corwin, Jr., found "that Chicago Bridge & Iron Company should have performed the prestressing of the spiral case" and entered an award directing that defendant pay to plaintiff the sum of $20,227.11. The total amount sought by plaintiff was $37,077.56. A written dissent as to "some of the findings stated in the award" was signed and entered by the third arbitrator, Elsener.

Plaintiff seeks to set aside the award and contends that in making the award the arbitrators exceeded their "authority" (Section 10 of Title 9 U.S.C. uses the word "powers") by going beyond the issues submitted to them. Plaintiff further contends that "the arbitrators have improperly computed the award based upon available evidence before them." Plaintiff relies on Section 11 of Title 9 U.S.C. for a modification of the award or a remand for such purpose.

The pertinent provisions of Section 10 of Title 9 U.S.C. read:

In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

\* \* \* \* \* \*

(d) *Where the arbitrators exceeded their powers,* or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. [Emphasis added]

Section 11 of Title 9 U.S.C. in its pertinent provisions reads:

In either of the following cases the United States court \* \* \* may make an order modifying or correcting the award upon application of any party to the arbitration—

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award.

\* \* \* \* \* \*

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

Whether the arbitrators exceeded their "powers" depends upon the issues which were submitted to them for decision. Normally, the issues submitted for arbitration are clearly defined in a formal agreement between the parties. Unfortunately, in this case no such formal agreement is included in the record. The record, which the Court must examine to determine the issues presented for decision of the arbitrators, consists of:

(a) The subcontract between the plaintiff and defendant and, in particular, the provisions of paragraphs I, under

the title "Work to be Performed" [1] and 23, under the title "Arbitration"; [2]

(b) The letter from plaintiff to defendant dated August 15, 1962, setting forth plaintiff's understanding of the terms of the contract to be incorporated in (a) above;

(c) The formal demand of defendant for arbitration dated August 14, 1964, submitted at the time it moved to stay the proceedings in the Miller Act case in Arizona;

(d) The order of the District Court in Arizona staying the Miller Act proceedings;

(e) Answers to questions propounded by the neutral arbitrator, Corwin, Jr.;

(f) Supplementary statements of issues and contentions (argumentative in character) filed by each party with the arbitrators;

(g) Written briefs filed with the arbitrators both before and after the arbitration proceedings;

(h) The memorandum and award made and entered by the majority of the arbitrators;

(i) The written dissent of arbitrator Elsener; and

(j) The transcript of the proceedings before the Arbitration Board.

Plaintiff takes the position that the arbitrators were not empowered to look beyond the four corners of the subcontract, (a) above, and the demand of defendant, (c) above, which demand plaintiff contends formed the basis of the stay order of the District Court in Arizona.

█ Before considering the merit of plaintiff's position, it should be noted that the arbitrators' authority was not limited by the order of the Arizona District Court. The remedy sought by the defendant in the Arizona District Court was merely the staying of the Miller Act lawsuit under Section 3 of Title 9 U.S.C. The Court's order did not direct the parties to arbitrate. It merely stayed the lawsuit pending arbitration in accordance with the agreement of the parties. Thus, the arbitrators derived their authority not from the order of the Court, but from the arbitration agreement, Article 23 of the General Conditions of the Subcontract, as specified by the demand for arbitration and the later statements and briefs of the parties defining the issues for arbitration. American Almond Products Co. v. Consolidated Pecan Sales Co., supra.

█ On the merits, this Court is of the view that the Board was not limited in its powers to the subcontract and the first demand of defendant for arbitration made on August 14, 1964. The

---

1. The subcontract under paragraph I. WORK TO BE PERFORMED recites in part: "Subcontractor agrees to furnish all labor, to furnish, supply and install all equipment, materials and supplies, * * *, as more specifically set forth in Section 16 of the General Conditions of this Subcontract, and to do any and all things required to perform all that portion of the work provided for in the General Contract which is described as follows: * * * (b) A portion of Item 79 of Bidding Schedule for Spec. No. DC–5750 described as the installation, assembly and welding of the upper and lower draft tube liners with pier noses and pit liners as well as the installation of the discharge ring, stay ring and spiral cases with test barrel and spider. The above described work shall include but not necessarily be limited to the follow-

ing as per Spec. No. DC–5750." Then follows a list of the included items and a list of items that the Contractor shall furnish to the Subcontactor, followed by a further proviso that "It is understood that this contract does not include work described as follows:". The excluded work is then described. Nowhere in the subcontract, either in the included or excluded work, is there any specific reference to prestressing spiral cases.

2. Paragraph 23 under the General Conditions of the Subcontract provides: "Arbitration: In case of any dispute between the parties as to the interpreta- of this agreement, * * * or with respect to any other matter arising out of or in connection with this Subcontract or its performance, either party may demand that the dispute be submitted to arbitration. * * * "

items of record listed above as (d) through (j) show that the parties did not limit the issues to the subcontract and the demand of August 14, 1964, and, furthermore, that the Board felt it was necessary to resort to extrinsic evidence to clear up an ambiguity which arose in its effort to determine what work was *intended and understood by the parties* to be the work described in the subcontract as "a portion of Item 79 of Bidding Schedule for Spec. No. DC–5750 described as the installation, assembly and welding of the upper and lower draft tube liners with pier noses and pit liners as well as the installation of the discharge ring, stay ring and spiral cases with test barrel and spider."

The demand of August 14, 1964 was broadened by the parties in their preliminary statements of the issues which were submitted to the arbitrators prior to the hearing.

Defendant states the issues in part as: "(a) Whether *by intention and understanding of the parties* or express contract language or both, the prestressing of the spiral cases was part of Chicago Bridge & Iron's subcontract." [Emphasis added.]

Plaintiff states the issues in part as: "The subcontract was clearly *intended and understood by the parties* to be the work under item 79 which was preliminary to CB & I subcontract work for the turbine manufacturer. \* \* \*" [Emphasis added.]

In the course of the hearing counsel for plaintiff clearly stated the broadened issue as follows: "MR. BROPHY: I think what is before the Board is what the parties did after the agreement, and what they did before the agreement, for the purpose of the Board's making up its mind what the agreement meant at the time that it was executed (p. 93, Transcript of Arbitration Proceedings).

Thus, both plaintiff and defendant included and understood to be included among the issues to be discussed and determined by the arbitrators the intention and understanding of the parties, which clearly goes beyond the question of the inclusion or not of a specific written covenant in the subcontract. While the memorandum opinion and award of the majority of the Board may not be a model for clarity, findings 8 and 11 [3] of the majority opinion can be fairly construed to hold that the parties intended and understood that plaintiff agreed to and was to do the prestressing work and finding 12 [4] can be fairly construed to state that the work of prestressing was not an *express written covenant* of the contract. This understanding of findings 8, 11 and 12 is confirmed in the penultimate paragraph of arbitrator Elsener's dissent, wherein he states:

> Even if Chicago Bridge should be backcharged, the finding that overtime should be included is incorrect. Either Chicago Bridge agreed to do the prestressing work or it did not. *The majority of this Board says it did.* The terms of the contract between Chicago Bridge and Ets-Hokin specifically excluded any responsibility of Chicago Bridge for premium pay for work Chicago Bridge agreed to do. [Emphasis added.]

---

3. Findings 8 and 11 of the majority opinion of the Board provide:
   8. That the oral offering of furnishing a stand-by operator by a responsible representative of Chicago Bridge and Iron Company to secure a contract should be as binding as the written word, as no evidence was presented of a written acceptance or refusal of this offer.
   11. That Chicago Bridge and Iron Company should have performed the prestressing of the spiral case and the Ets-Hokin Corporation should have performed the cooling of the concrete surrounding the spiral case.

4. Finding 12 of the majority opinion of the Board provides:
   12. That the Chicago Bridge and Iron Company's claim that if responsible, they should not be charged overtime rates, this must be denied as Exhibit 83, pp. C–9, covers work which Chicago Bridge and Iron Company agrees to perform, etc. Evidence indicates they did not agree to perform the prestressing work.

A further indication of the broadened scope of the issues presented to the Board and understood by the members of the Board to be within their province in the list of twenty-one questions submitted by arbitrator Corwin, Jr., to the parties relating to the subcontract, the performance of the work and the negotiations between the parties. Question No. 19(e) asked, "Was there any discussion between contractor and subcontractor about who would perform the prestressing work?". Both parties answered this question. Plaintiff raised no objection to the question as being beyond the scope of the submission, as plaintiff now contends.

■■ This Court finds that though there is no specific mention in the subcontract of an obligation on the part of plaintiff to do the prestressing work, the arbitrators in the determination of this issue were not limited to the four corners of the subcontract, but were empowered by reason of the supplementation and broadening of the issues presented to them to resort to extrinsic evidence to determine whether the parties intended and understood that plaintiff would do the prestressing work. The award was within the terms of the submission and regardless of the degree to which the views of the arbitrators on the facts and the law may be open to question, such award "will not be set aside by a court for errors either in law or fact." See San Martine Companie De Navegacion, S. A. v. Saguenay Terminals Ltd., 293 F.2d 796, 800–802 (9th Cir. 1961).

■ Plaintiff has not sustained its burden, and there is no basis for the Court to determine that the award was beyond the submission or that the award contains anything but the honest decision of the arbitrators after a full and fair hearing of the parties. This Court will not substitute its judgment for that of the arbitrators.

■ The Court further adds that even if it be conceded that a comparison of paragraphs, 8, 11 and 12 of the majority opinion accompanying the award leads one to conclude that the award was ambiguous, this is not a ground for the Court to set aside the award. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ The foregoing findings and conclusions have been based entirely on federal law. If the Court should treat the application herein as one to vacate or correct the award under California law, it must come to the same conclusion reached above. California law is the same as federal law insofar as grounds for vacating or correcting the award are concerned. California Code of Civil Procedure, Section 1286.2. The decision of the arbitrators is final both as to questions of fact and of law. Sapp v. Barenfeld, 34 Cal.2d 515, 212 P.2d 233 (1949). Every intendment of validity must be given the award. Griffith Co. v. San Diego College for Women, 45 Cal.2d 501, 516, 289 P.2d 476, 47 A.L.R.2d 1349 (1955).

■ The record will not sustain plaintiff's second contention that the arbitrators improperly computed the award. While there may have been "available evidence before them" from which a correction of a claimed miscalculation of backcharges could have been made to plaintiff's benefit in the sum of $2,662.08 or $1,305.93 or some other sum, the fact remains that this available proof was never submitted to the arbitrators in any verified form. Although there was discussion at the hearing relative to the reconciling of any claimed differences, this was not done. See page 289 of the Transcript of the Arbitration Proceedings. Under the circumstances, the award must be accepted as final, and this Court will not speculate as to what corrections, if any, might have been made.

The application to set aside the award and to substitute a different award in its place is denied. The petition to confirm the award is granted.

This opinion shall constitute the findings of fact and conclusions of law of the Court, and based thereon defendant is directed to submit an appropriate judgment to the Court.